[No. F028023. Fifth Dist. Mar. 24, 1999.]

THE STATE OF OREGON, Plaintiff and Respondent, v.
JOSEPH L. VARGAS II, Defendant and Appellant.

**COUNSEL**

Allen, Polgar, Proietti & Fagalde, Susan L. Albertoni and Brian L. McCabe for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Assistant Attorney General, Carol Ann White and M. J. Hamilton, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STONE (W. A.) Acting P. J.**—Appellant, Joseph L. Vargas II, is the father of three minor children living with their mother in Oregon. The children's mother receives public assistance from Oregon's Department of Human Resources (DHR). On July 24, 1995, DHR filed a uniform support petition in the Merced County Superior Court seeking reimbursement from appellant for child support.

Appellant was incarcerated on July 18, 1996, for crimes not disclosed in the record. Around that time he was served with a notice to appear and an order to show cause for the petition filed by DHR. He filed an answer on September 25, 1996, declaring he had no means of earning income while incarcerated and requested the court to order child support in the amount of $0.

At the December 6, 1996, hearing, appellant informed the court he was beginning a four-year sentence at the California Rehabilitation Center, an institution that does not provide employment opportunities. The People countered that child support orders should not be premised upon a current ability to pay, but rather an ability to pay over time. Furthermore, the People asserted, justice requires that appellant take financial responsibility for his children.

The court concluded the People had the better argument. It imputed a minimum wage earning capacity on appellant and ordered him to pay $75 per month per child, for a total of $225 per month.

### DISCUSSION

Child support orders are governed by the statewide uniform guideline found in Family Code sections 4050-4076. ■ Although the court normally uses the noncustodial parent's actual income to determine the monthly amount of child support, Family Code section 4058, subdivision (b) permits the court, in its discretion, to substitute actual income with earning capacity if consistent with the child's best interests.[1] While there is no statutory definition of earning capacity, its meaning has been well established with a three-prong test that was first articulated in *In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367 [263 Cal.Rptr. 243] (*Regnery*). "Earning capacity is composed of (1) the ability to work, . . . ; (2) the willingness to work

---

[1]Family Code section 4058, subdivision (b) states: "The court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children."

. . . ; and (3) an opportunity to work which means an employer who is willing to hire. [Citations.]" (*Id.* at p. 1372, cited with approval in *In re Marriage of Simpson* (1992) 4 Cal.4th 225, 234 [14 Cal.Rptr.2d 411, 841 P.2d 931](*Simpson*).) This rule has been modified to include only the first and third prongs; thus, the definition of earning capacity is satisfied when the payer has both the ability and opportunity to work. (*In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 995, fn. 6 [64 Cal.Rptr.2d 383].) In that instance the court may use earning capacity rather than actual income to determine child support payments. (*Regnery, supra,* 214 Cal.App.3d at p. 1372.)

Application of the earning capacity standard has experienced an evolving history. Earlier courts used it only in situations in which the payer deliberately avoided his financial responsibilities by refusing employment or otherwise depressing his income. (*Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115, 121 [96 Cal.Rptr. 408]; *In re Marriage of Williams* (1984) 155 Cal.App.3d 57, 62 [202 Cal.Rptr. 10].) This limited application was subsequently expanded to better comport with the language of Family Code section 4058. "While deliberate avoidance of family responsibilities is a significant factor in the decision to consider earning capacity [citation], the statute explicitly authorizes consideration of earning capacity in all cases. [(Fam. Code, § 4058, subd. (b)).] Accordingly, the trial court's consideration of earning capacity is not limited to cases in which a deliberate attempt to avoid support responsibilities is found." (*In re Marriage of Ilas* (1993) 12 Cal.App.4th 1630, 1638-1639 [16 Cal.Rptr.2d 345]; see also *In re Marriage of Nolte* (1987) 191 Cal.App.3d 966, 972-973 [236 Cal.Rptr. 706]; *In re Marriage of Padilla* (1995) 38 Cal.App.4th 1212, 1220 [45 Cal.Rptr.2d 555].)

▇ As such, a child support order premised upon earning capacity rather than actual income will remain undisturbed on appeal absent an abuse of discretion. (*In re Marriage of Paulin* (1996) 46 Cal.App.4th 1378, 1384 [54 Cal.Rptr.2d 314].) " '[T]he only limitations against imputing income to an unemployed or underemployed parent. is where the parent in fact has *no* "earning capacity" . . . or relying on earning capacity would not be consistent with the children's best interest. . . .' " (*In re Marriage of Hinman, supra,* 55 Cal.App.4th at p. 998.) In other words, "[a]*s long as ability and opportunity to earn exist,* as defined by the test set forth in *Regnery* and approved in *Simpson, supra,* 4 Cal.4th at page 234, the court has the discretion to consider earning capacity when consistent with the child or children's best interests. . . ." (*In re Marriage of Hinman, supra,* 55 Cal.App.4th at p. 999, italics added.)

With these principles in mind, we turn our attention to the case before us. ▇ Appellant contends that because he is without income or employment opportunities during incarceration, the court abused its discretion when it ordered him to pay child support.

In our opinion, *Regnery* and its progeny dictate that both elements of the earning capacity standard must be satisfied *regardless of the situation in which it is applied.* If either element is not established, earning capacity cannot be substituted for actual income. Thus, if appellant does not have an opportunity to work, whether in prison or not, the earning capacity test is not satisfied and cannot be used to determine his child support payments. In so holding, we are not unmindful of the policy arguments that can be made to support an opposite result for incarcerated parents. Nor are we unaware of jurisdictions that have found parents liable for child support despite their lack of earning capacity during incarceration. But unlike most courts, we are here confronted with a threshold test that clearly must be satisfied before earning capacity can be used. "[There is] a three-prong test before the capacity to earn standard may be applied." (*Regnery, supra,* 214 Cal.App.3d at p. 1372.) Furthermore, we emphasize that our holding today in no way suggests that incarcerated parents are exempt from child support. Rather, we simply decline to carve an exception to the rule that before earning capacity can be applied, its definition must first be satisfied. As with any other parent, the court must determine whether an incarcerated parent has the ability and the *opportunity* to work before using earning capacity to assess child support payments.

While the People agree appellant does not currently have an opportunity to work, they argue the earning capacity definition is nonetheless satisfied because he had a job prior to incarceration and most likely will return to work upon his release. We are not persuaded. Our review of case law addressing this issue reveals that in every instance the earning capacity test was satisfied with *current* circumstances. For example, in *In re Marriage of Ilas, supra,* 12 Cal.App.4th 1630, the noncustodial parent quit his job to attend medical school. Nevertheless, because he *currently* had both the ability and the opportunity to return to work, the court affirmed the use of earning capacity to assess his child support payments. Similarly, in *In re Marriage of Hinman, supra,* 55 Cal.App.4th 988, the noncustodial parent quit her job to stay home and take care of children from a new marriage. The trial court applied the earning capacity standard to determine child support payments because the evidence established she had the *current* ability and opportunity to return to work. In affirming, the appellate court noted "[appellant's] opposition rested solely on the fact that . . . she would not be able to reconcile working with her need to care for her children. [*She*] *did not claim she was temporarily disabled from employment* . . . ." (*Id.* at p. 1000, italics added.) In both examples, the court used earning capacity to determine child support because the parent had the current ability and opportunity to return to work. We find this reasoning sound.

Appellant argues here, as he did before the trial court, that he is without income or employment opportunities while incarcerated. However, our review of the record fails to reveal any express findings by the trial court on

these claims. Accordingly, we remand the action to the trial court to determine whether appellant has assets, income, or employment possibilities, which will enable him to meet his current child support obligation, either in whole or in part. Each party should be allowed to submit supplementary evidence. Following the hearing the superior court should make its findings.[2]

### DISPOSITION

The judgment is reversed and the matter remanded to the trial court for findings consistent with this opinion. The parties are to bear their respective costs.

Harris, J., and Buckley, J., concurred.

---

[2]In the second portion of his brief, appellant argues the trial court abused its discretion when it imputed a minimum wage earning capacity. However, because we have remanded the action for express findings on appellant's actual income/employment opportunities during incarceration, we conclude the argument is premature. Suffice it to say, the imputation of minimum wage, like any other amount, must be supported by the evidence.