32 Cal.Rptr.3d 292 (2005)
131 Cal.App.4th 695
In re MARRIAGE OF Thomas M. and Candace A. EGGERS.
Thomas M. Eggers, Appellant,
v.
Candace A. Eggers, Respondent.
No. G034027.
Court of Appeal, Fourth District, Division Three.
July 28, 2005.
*293 Phillip Andrew Case for Appellant.
Candace A. Eggers, in pro per, for Respondent.

OPINION
RYLAARSDAM, Acting P.J.
Family Code section 4058, subdivision (b), which addresses annual gross income of parents for child support purposes, provides, "The court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children." Here the employment of father, appellant Thomas M. Eggers, was terminated by his employer for misconduct. Father, who was subject to support orders, sought modification of the orders based on a change of circumstances. The trial court denied his request and imputed income to father based on his earnings from his former employment, thereby equating the conduct that led to his loss of employment to a voluntary or intentional reduction in income.
Imputation of income is not automatic upon loss of employment due to misconduct. Father had the burden of proof to show he did not have the ability or opportunity to work, but the trial court did not reach those issues. We reverse the order and remand the matter to the trial court to conduct a new hearing and determine whether income should be imputed to father under Family Code section 4058, subdivision (b), and, if so, the amount of such income to be imputed.

FACTS
In 1999 father was ordered to pay $1,382 in child support and $1,618 in spousal support. Four years later, he obtained an order to show cause seeking a reduction in his support obligations based on a change of circumstances. He alleged that "[t]hrough no fault of my own, I was terminated from my 7[-]year employment with The Edison Company. I have no severance pay to be received from my employer, and I filed for unemployment compensation.... If approved I will be receiving $370.00 per week."
At the hearing on the order to show cause, Steven R. Sullivan, a regional vice president of Southern California Edison and father's supervisor, testified that father had been employed since 1996 as director of legislative and local government affairs. Sullivan terminated father's employment based on a report he received from Edison's equal opportunity department. It disclosed that father had violated equal opportunity policies "multiple times over a prolonged period, and distributed materials inappropriately through [the employer's] computer system, which is also in violation of company policy." These findings were based upon father having sent offensive e-mails of a sexual nature.
Father, who was 55 years old at the time of the hearing, testified that he had been actively looking for employment since he was terminated. "I probably filed with 40 or 50 different people, including the governor. See if I can get something there. I've applied at [the] County of Orange." The court recognized father's difficulty in obtaining employment: "It's uniquely a difficult age.... It's tough because you're overqualified. You're qualified for some jobs, and you can't get them. And you're overqualified for others, and no one will hire you."
Nevertheless, the court denied father's request to decrease his support obligations. The court made the following findings, among others: "It is uncontradicted ... that [father] was on reasonable notice that the conduct they found him *294 guilty of was improper conduct according to [Edison's] rules.... [¶] ... [I]t appears ... that [father] engaged in conduct which was unreasonable with reference to his obligation to pay child and spousal support.... [¶] ... [¶] ... [T]he court will, therefore, impute to [father] the income that he had at the time that he was terminated, which means ... that there is no proof of a change of circumstance, and the court denies [father's] request to modify the existing child and spousal support orders."

DISCUSSION
Although the rules pertaining to the imputation of income for purposes of spousal and child support may differ, father does not discuss this. Thus we consider any issue that may pertain to this distinction as waived for purposes of this appeal. (See People v. Stanley (1995) 10 Cal.4th 764, 793, 42 Cal.Rptr.2d 543, 897 P.2d 481 ["`[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration'"].) But this does not preclude the trial court, on remand, from applying the appropriate rules for each.

The court abused its discretion by imputing income to father without addressing whether father had the ability and opportunity to work or eligible assets that could be used for support.
The trial court concluded there was no change in father's circumstances justifying a reduction in support by imputing income to father in the amount he had received before the termination of his employment. The test for imputation of income for child support and the reasons therefor are set forth in State of Oregon v. Vargas (1999) 70 Cal.App.4th 1123, 83 Cal.Rptr.2d 229 (Vargas): "Child support orders are governed by the statewide uniform guideline found in Family Code sections 4050-4076. Although the court normally uses the non-custodial parent's actual income to determine the monthly amount of child support, Family Code section 4058, subdivision (b) permits the court, in its discretion, to substitute actual income with earning capacity if consistent with the child's best interests. While there is no statutory definition of earning capacity, its meaning has been well established with a ... test that was first articulated in In re Marriage of Regnery (1989) 214 Cal.App.3d 1367, 263 Cal.Rptr. 243 .... `Earning capacity is composed of (1) the ability to work ...; (2) the willingness to work ...; and (3) an opportunity to work which means an employer who is willing to hire. [Citations.]' [Citations.]" (Vargas, supra, 70 Cal.App.4th at pp. 1125-1126, 83 Cal.Rptr.2d 229, fn. omitted.) However, "[w]hen the payer is unwilling to pay and the other two factors are present, the court may apply the earning capacity standard [rather than actual income] to deter the shirking of one's family obligations." (In re Marriage of Regnery, supra, 214 Cal.App.3d at pp. 1372-1373, 263 Cal.Rptr. 243, italics omitted.)
In In re Marriage of Padilla (1995) 38 Cal.App.4th 1212, 45 Cal.Rptr.2d 555 (Padilla), the father voluntarily quit a job to open his own business. This court affirmed the imputation of income based on the father's earning capacity determined by his income from his former position, ignoring his voluntary change of profession: "A parent's motivation for reducing available income is irrelevant when the ability and opportunity to adequately and reasonably provide for the child are present. *295 [Citation.]" (Id. at p. 1218, 45 Cal.Rptr.2d 555.)
In re Marriage of Ilas (1993) 12 Cal.App.4th 1630, 16 Cal.Rptr.2d 345 (Ilas), where the father voluntarily left his employment to become a medical student, is to the same effect. There, the court affirmed denial of the father's request to decrease his child support obligation, holding the father "`did not have the right to divest himself of his earning ability at the expense of [his former wife] and his two minor children. [The father] may wish to undertake and pursue and continue to pursue his acquisition of a medical doctorate degree, but he must also continue to pay his child and spousal support.'" (Id. at p. 1639, 16 Cal.Rptr.2d 345.) The amount of child support had been previously agreed to based on his earnings from his former employment.
Therefore, when a supporting parent quits a job, the trial court has discretion to conclude the parent's conduct reflected a divestiture of resources required for child support obligations. It may refer to the former job as the basis for its findings of ability and opportunity and may impute income to the parent based on his or her prior earnings. When a supporting parent loses a job, the trial court may impute income to that parent based on his or her earning capacity if the amount of income imputed is supported by evidence of opportunity and ability to work reflecting that level of income.
Vargas, supra, 70 Cal.App.4th 1123, 83 Cal.Rptr.2d 229 presented somewhat unusual facts. Despite the fact the father was under a four-year criminal sentence and incarcerated in a facility that did not provide employment opportunities, the trial court imputed income based on the minimum wage. (Id. at p. 1125, 83 Cal.Rptr.2d 229.) The Court of Appeal concluded the trial court erred by automatically imputing the minimum wage to defendant without considering opportunity and ability to earn income while incarcerated, stating, "if appellant does not have an opportunity to work, whether in prison or not, the earning capacity test is not satisfied and cannot be used to determine his child support payments." (Id. at p. 1127, 83 Cal.Rptr.2d 229.) The case was remanded to the trial court to consider the father's income, ability to earn income, and assets based on his current situation. (Id. at p. 1128, 83 Cal.Rptr.2d 229.)
In this case, the supporting parent lost his job, but due to misconduct. Our research has not revealed any case analyzing the determination of earning capacity based on income from the former job under similar circumstances. Citing Ilas, supra, 12 Cal.App.4th 1630, 16 Cal.Rptr.2d 345, and Padilla, supra, 38 Cal.App.4th 1212, 45 Cal.Rptr.2d 555, the trial court imputed income based on earnings from father's lost jobimpliedly concluding that, under these circumstances, employment termination was more voluntary in nature (a divestiture) than involuntary. There may be situations where the supporting parent's conduct warrants considering a claimed involuntary termination of employment as actually voluntary for purposes of determining the parent's earning capacity. We conclude that on this record, however, the trial court erred by so construing the termination of employment as voluntary where defendant's employment was terminated for using extremely poor judgment in sending multiple e-mails that were sexual in nature to a co-worker.

The court must conduct a new hearing on remand.
Because the trial court never reached the issues of father's ability and opportunity to work, the matter must be remanded for a new hearing. The only evidence *296 presented in the trial court was father's version of his employment opportunities and his efforts to obtain employment. But that statement begins, not ends, the inquiry for the trial court. As recognized in In re Marriage of LaBass & Munsee (1997) 56 Cal.App.4th 1331, 1339, 66 Cal.Rptr.2d 393, it was "incumbent upon [father] to show that, despite reasonable efforts, [he] could not secure employment despite [his] qualifications." Father has the burden to prove that he either lacked the ability to find employment or had no reasonable opportunities to obtain employment. (Id. at p. 1339, 66 Cal.Rptr.2d 393; accord, In re Marriage of Henry (2005) 126 Cal.App.4th 111, 120, 23 Cal.Rptr.3d 707.) Mother "bore no burden to convince the court that [father] would have secured a full-time job had [he] applied." (In re Marriage of LaBass & Munsee, supra, 56 Cal.App.4th at p. 1339, 66 Cal.Rptr.2d 393.)
Father never addressed the nature of the job he was seeking; instead he merely gave the names of the entities to which he applied. Nor did he disclose what jobs he did not apply for in the first place. Mother did not cross-examine him on these issues. Further, there was no evidence of father's assets that might be available to pay support. (See, e.g., In re Marriage of Smith (2001) 90 Cal.App.4th 74, 83, 108 Cal.Rptr.2d 537; Vargas, supra, 70 Cal.App.4th 1123, 1128, 83 Cal.Rptr.2d 229.)
Although mother attempted to present evidence addressing some of these issues on appeal, we cannot consider it here. "`An appellate court should not take notice of matters not first presented to and considered by the trial court, where to do so would unfairly permit "one side to press an issue or theory on appeal that was not raised below." [Citation.]' [Citation.]" (People v. Catlin (2001) 26 Cal.4th 81, 171, 109 Cal.Rptr.2d 31, 26 P.3d 357.) On remand, the trial court should consider all relevant evidence, including supplemental evidence, presented by both sides.

DISPOSITION
The order is reversed and the case is remanded to the trial court to conduct a new hearing and determine the propriety of a reduction in support payments in accordance with the views expressed herein. In the interest of justice, the parties shall bear their own costs on appeal.
WE CONCUR: BEDSWORTH and FYBEL, JJ.