Filed 12/12/14  Marriage of Lipstone CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Marriage of DOUGLAS and CAROL LIPSTONE. | B249659 |
| | (Los Angeles County Super. Ct. No. BD500436) |
| DOUGLAS LIPSTONE,<br><br>        Respondent,<br><br>    v.<br><br>CAROL LIPSTONE,<br><br>        Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elia Weinbach, Judge.  Affirmed.

Carol Lipstone, in pro. per., for Appellant.

No appearance for Respondent.

_____

Carol Lipstone appeals an order granting a request by her ex-husband, Douglas Lipstone, to modify his support obligations. Carol[1] maintains there is insufficient evidence of a material change of circumstances to warrant a modification. She further contends that the trial court erred by: (1) failing to comply with uniform child support guidelines; (2) failing to consider factors in Family Code section 4320[2] in modifying spousal support; (3) issuing an inadequate statement of decision (SOD); (4) ignoring the disentitlement doctrine; (5) ignoring the income of Douglas's new spouse; and (6) refusing to set aside portions of the October 2012 stipulation. We conclude these assertions lack merit, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Carol and Douglas were married for approximately 16 years. They have two children, Sarah and Joshua. Douglas filed for dissolution in February 2009. Pursuant to a stipulated judgment entered on September 28, 2010, Douglas, then a shareholder in the law firm of BuchalterNemer, PLC (Buchalter), was required to pay support as follows:

Base monthly child support of $1,470 for Joshua and $2,450 for Sarah;

Additional support of $250 per child per month;

Additional child support of 10 percent of Douglas's gross income per year above a base amount of $285,000;

Base monthly spousal support of $3,843; and

Additional spousal support consisting of 15 percent of Douglas's gross income per year above his base salary of $285,000.

On May 14, 2012, Douglas, then unemployed, filed an order to show cause (OSC) seeking a downward modification in support. By then he had been forced to leave

---

[1] For the sake of clarity and convenience, and intending no disrespect, we refer to the parties by their first names.

[2] All further statutory references are to the Family Code unless otherwise indicated.

Buchalter, and worked for the law firm of Manning & Kass (Manning) from April 2011 to April 2012, until that firm declined to renew his employment contract.

Douglas's base salary at Buchalter was $285,000. His base salary at Manning was $240,000. He received his last paycheck from the Manning firm in mid-April 2012 and was unemployed for about five weeks before obtaining a position at the Enenstein & Ribakoff law firm (Enenstein) on May 21, 2012, with an annual gross salary of about $200,000. Carol opposed the OSC arguing Douglas voluntarily modified his employment status postjudgment. After Douglas became employed at Enenstein, he and Carol (each represented by counsel) resolved the OSC by stipulation. The only modification of Douglas's support obligation was to reduce support for Joshua, who had turned 18 and completed 12th grade. The stipulation also resolved the parties' dispute regarding Douglas's support arrearages of about $6,000 and minor medical expenses, establishing a payment schedule for the arrearages. On October 16, 2012, the trial court entered an order based upon the stipulation. Apart from this action and the OSC filed when he became unemployed, Douglas has not sought to modify his support obligation which remained fixed even as his base salary decreased at the Manning and Enenstein firms.

On or before November 26, 2012, Douglas was informed that his employment at the Enenstein firm would be terminated at the end of the month. On November 29, 2012, facing termination without another pending offer of employment, and in anticipation of receiving no further salary, Douglas filed the instant request for an order to modify support (RFO). On November 30, 2012, Douglas accepted an offer to become an independent contractor at the Enenstein firm. As an independent contractor, Douglas no longer receives a base salary. He is paid 60 percent of attorney fees received by the firm for work he originates, 40 percent of attorney fees the firm receives for work he billed but which was originated by someone else, and 20 percent of the fees the firm receives for other attorneys' work on matters he originates. Douglas declared that it was impossible for him to estimate his monthly income for 2013.

On December 6, 2012, Carol filed her response to the RFO arguing, as pertinent here, that Douglas's claim to have been terminated by the Enenstein firm was contradicted by the evidence,[3] that he had falsified his income and expense declaration which, in any event, did not support his claim that he would be unable to maintain support, and that Douglas remained in arrears on his support obligations.[4]

In a supplemental declaration filed on December 9, 2012, and a reply brief in support of the RFO, Douglas asserted that, because he would now be paid on a 100 percent commission basis, it would be impermissible to base his future support obligations on such speculative earnings. Accordingly, he requested that his monthly support obligation be modified according to an *Ostler-Smith*[5] calculation tied to his actual earnings to reflect his current circumstances and actual income available for support.

Each party filed additional memoranda and declarations in support of or in opposition to the RFO, which was heard on January 17, 2013. The hearing was based solely on declarations, documentary evidence and the parties' argument. At the conclusion of that hearing the court granted the RFO. On a going forward basis, Douglas was ordered to pay child and spousal support according to his proposed *Ostler-Smith*

---

[3] In substantiation, Carol cited evidence that on December 5 Douglas was still identified as a partner on the firm's website, his voice-mail at the firm remained active on December 3, and when she called the firm's controller on November 30 to ask about a wage assignment order, the controller did not mention Douglas's termination.

[4] On appeal, as below, Carol attempts to raise or revisit numerous matters unrelated to the RFO, such as Douglas's alleged failure to comply with various court orders, his ongoing attempts to remain underemployed, and his failure to provide emotional support for Joshua and Sarah. Like the trial court before us, given that no showing was made that Douglas has violated any prior order, our focus is squarely and solely on the question of whether circumstances warranted the downward modification sought in the November 2012 RFO after Douglas's change of status at the Enenstein firm, and whether the modification he proposed was fair.

[5] *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33 (*Ostler-Smith*). An *Ostler-Smith* support order provides for payment of a fixed percentage of uncertain future income (e.g., bonus income) if that income materializes. (See *In re Marriage of Mosley* (2008) 165 Cal.App.4th 1375, 1387 (*Mosley*).)

calculation by the fifth of each month (plus a previously ordered add-on), and to provide Carol a copy of his prior month's pay stub every month. In the event Douglas failed timely to submit the pay stub and pay support, an additional support add-on of $1,000 would be immediately effective and due by the end of that particular month, bearing interest at the legal rate until paid. Douglas's counsel was ordered to prepare an order after hearing.

On March 7, 2013, Carol filed an RFO to "Enforce Judgment re Support Medical Expense Reimbursement *Ostler/Smith*, and a "Memorandum of Points and Authorities in Support of [RFO] to Correct Abuse of Discretion and Attorney Misconduct by Enforcing Spousal Support and Child Support Pursuant to Judgment." She argued, among other things, that the trial court abused its discretion in ruling in Douglas's favor at the January 17 hearing, that Douglas had voluntarily reduced his income so that his support obligation was reduced by 82 percent over the previous 2.5 years while he maintained a high standard of living and incurred unnecessary legal fees at his children's and Carol's expense, that he and his counsel had manipulated and misled the court, and that the October 2012 stipulation should be set aside. Two weeks later, Carol delivered to a different trial judge a letter enclosing her own proposed order, with an attached exhibit detailing the ways in which Douglas purportedly had failed to comply with court orders discussed at the January 17 hearing, and a transcript of that hearing. In response, Douglas argued that Carol's materials were really an inappropriate, untimely motion for reconsideration (Code Civ. Proc., § 1008, subd. (a)).

On August 5, 2013, at Carol's request, the court issued an SOD. (§ 3654.) This appeal followed.[6]

---

[6] The notice of appeal from the April 29, 2013 order granting Douglas's request for a downward modification was filed after the order's rendition but before entry of the statement of decision. We treat the notice of appeal as if filed immediately after entry of the statement of decision. (See Cal. Rules of Court, rule 8.104(e).)

**DISCUSSION**

On appeal Carol contends the trial court abused its discretion when it granted Douglas's request to modify his support obligations because there is insufficient evidence of a material change of circumstances to warrant a modification. She further contends that the trial court erred by: (1) failing to comply with uniform child support guidelines; (2) failing to consider factors in section 4320 in modifying spousal support; (3) issuing an inadequate SOD; (4) ignoring the disentitlement doctrine; (5) ignoring the income of Douglas's new spouse; and (6) refusing to set aside portions of the October 2012 stipulation.[7] None of these assertions has merit.

1. *Modification of support orders due to materially changed circumstances*

Carol argues there is insufficient evidence to justify the trial court's finding of a material change of circumstances justifying a downward modification in Douglas's support obligations. Her principal argument is that the trial court abused its discretion in modifying Douglas's support obligation by relying on false information regarding Douglas's future income and refusing to impute income based on Douglas's measurable earning capacity to pay additional support.

a. *Changed circumstances and refusal to impute income*

A child support order "may be modified or terminated at any time as the court determines to be necessary." (§ 3651, subd. (a).) If the original order is consistent with the statewide uniform guidelines,[8] a supporting parent seeking a downward adjustment

---

[7] Douglas did not file a respondent's brief. We do not consider this to be a concession, and reach the merits of the appeal. (*In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1078, fn. 1 (*Riddle*); *In re Bryce* C. (1995) 12 Cal.4th 226, 232–233 [failure to file respondent's brief is not treated as consent to a reversal].) We determine the appeal based on the record provided and Carol's opening brief. (Cal. Rules of Court, rule 8.220(a)(2).) As appellant, Carol retains the burden to demonstrate prejudicial error, even if Douglas does not file a brief. (*Ruttenberg v. Department of Motor Vehicles* (1987) 194 Cal.App.3d 1277, 1282.)

[8] We look to the stipulated order entered in October 2012 which provides for the same level of support (for Carol and the remaining minor) as the September 2010

must introduce admissible evidence of a material change of circumstances. (See *In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 386–392 (*Bodo*); *In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1015; *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 298 (*Cheriton*).) Similarly, a party seeking to modify spousal support must also demonstrate a material change of factual circumstances. (*In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 398; *In re Marriage of Tydlaska* (2003) 114 Cal.App.4th 572, 575.)

Trial courts have broad discretion to determine whether changed circumstances warrant a downward modification. (See *In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1233–1234; *In re Marriage of Terry* (2000) 80 Cal.App.4th 921, 928.) No strict numerical guideline dictates whether a change in income will be considered significant enough to constitute a material change of circumstances. The determination is made on a case-by-case basis. (*In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 556.) An appellate court will consider whether there is substantial evidence to support the trial court's factual determinations and whether that court reasonably exercised its discretion. (*In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 730.) In the absence of an abuse of discretion, we uphold the court's order even if we would have reached a different conclusion based on the facts. (*Id*. at pp. 730–731; see *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 47; *In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1046–1047.)

At the outset it is important to recognize that while characterized as a downward modification due to a zero base salary, the court did not exclude Douglas's future earned commission income from its support calculation, it merely changed the method for calculating support. Douglas must pay Carol a percentage of any commission earned, when it is earned. As discussed below, the court's decision not to attempt to estimate those commissions and incorporate them in a monthly award was reasonable because

---

judgment. As discussed in section 5 below, Carol has not shown the stipulated amount deviated from the statewide guideline.

while it was predictable that some commission would be earned each month, it was not possible when the RFO was decided confidently to estimate how much commission would be earned in any given month. The amount of commission Douglas earns depends entirely on his performance in generating business at Enenstein, and the firm's ability to collect for that business and for work performed by Douglas. At the time of the RFO there was minimal evidence regarding commissions earned. Indeed, by January 17, 2013, Douglas had received only a single month's pay of just over $3,700, about $13,000 less than he had historically earned each month. Under these circumstances, the court's decision to require payment of a percentage of actual commissions when earned represented a fair and appropriate exercise of discretion. Such an allocation is authorized by section 4064, which states that the "court may adjust child support as appropriate to accommodate the seasonal or fluctuating income of either parent." (See *Riddle*, *supra*, 125 Cal.App.4th at pp. 1081–1084 [finding an abuse of discretion when trial court refused to accommodate parent's fluctuating income in circumstances similar to those here]; cf., *Mosley*, *supra*, 165 Cal.App.4th at pp. 1386–1387 [abuse of discretion for trial court to refuse to treat uncertain bonus income separately].)

When, as here, a supporting spouse seeks a reduction in support due to job loss, courts typically invoke income imputation rules to determine if a change of circumstances has been shown. (See § 4058, subd. (b);[9] *In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291, 1299–1308 (*Bardzik*); *In re Marriage of Eggers* (2005) 131 Cal.App.4th 695, 699–701 (*Eggers*).) In such cases, the court examines whether the payor spouse has the ability and opportunity to earn the same level of income as before his or her job loss. (See *Eggers*, at p. 700; see also *Bardzik*, at pp. 1302, 1304.) The focus is on the party's earning capacity, viz., "the income the spouse is reasonably capable of earning based upon the spouse's age, health, education, marketable skills,

---

[9] Section 4058, subdivision (b) provides that the trial court "may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interest of the children."

employment history, and the availability of employment opportunities." (*In re Marriage of Simpson* (1992) 4 Cal.4th 225, 234; see *In re Marriage of Paulin* (1996) 46 Cal.App.4th 1378, 1383.) The pertinent question is whether the spouse has the ability and opportunity to earn his or her prior income. (*Bardzik*, at p. 1302; see *In re Marriage of LaBass & Munsee* (1997) 56 Cal.App.4th 1331, 1337–1338.)

Carol maintains Douglas purposefully diminished his earning capacity by voluntarily relinquishing lucrative positions at the Buchalter and Manning firms. The trial court properly found these job changes irrelevant. Douglas did not request a modification of the support order after leaving Buchalter. He did file an OSC requesting a downward modification when he became unemployed after Manning chose not to renew his contract. That request, however, was resolved by the parties' stipulation with no change in his support obligation as to the sole remaining minor after Douglas was hired by Enenstein a few weeks after leaving Manning. The trial court correctly determined that the purported loss of income from the Enenstein firm which precipitated the RFO is the only change at issue here. As to that, the court found Douglas met his burden of proof to warrant a modification of his support obligation after the shift in his compensation from a base salary to a commission only formula based on origination of and payment for business.[10] Because this compensation structure was new, the court agreed that Douglas's past earnings history was not an accurate predictor of future earnings and refused to impute income. The record supports that conclusion.

Income may not be imputed for purposes of a support order based on a party's earning capacity absent evidence the party has both the ability and an opportunity to earn that income on a going forward basis. (*Bardzik*, *supra*, 165 Cal.App.4th at p. 1302.) This rule obtains even where a party voluntarily left a prior position at which he or she

---

[10] It is important to note that the *Ostler/Smith* adjustment of Douglas's support obligations is not necessarily a downward modification. As the court observed, according to the new calculation, when or if Douglas earns $285,000, the amount of base salary on which his support obligation was premised, his monthly *obligation increases* to $10,769.00, $4,476 more than his prior support.

earned the income the other spouse seeks to impute.  (*In re Marriage of Berger* (2009) 170 Cal.App.4th 1070,1079–1080.)

Riddle, *supra*, 125 Cal.App.4th 1075 and *Mosley*, *supra*, 165 Cal.App.4th 1375, are particularly instructive.  In *Riddle*, the husband, a financial advisor for an investment firm, was compensated on a fluctuating basis, depending on the amount of commission earned in a given month.  (*Riddle*, at pp. 1077–1078.)  The trial court computed the husband's pendente lite support obligation using just two calendar months of 2003.  That figure differed markedly from one the court would have reached had it used a more representative time period of the preceding 12 months.  (*Id*. at pp. 1078–1079.)  The court held that the calculation of a party's prospective earnings on which support is to be paid must be based on stable, representative numbers, even where the party's income fluctuates from month to month.  (*Id*. at pp. 1081–1082.)  Sections 4055, 4059 and 4060, place a "heavy emphasis on 12 months or 'annual' income as a benchmark for the calculation."  (*Id*. at pp. 1083–1084.)  Given the husband's fluctuating income in an industry that traditionally varies with the economy as a whole, the court must be careful not to employ either too long, or too short, a period in its effort to gauge what the party's income will be in the immediate future.  (*Ibid*.)  The matter was remanded for recalculation of support orders based on a realistic time sample.  (*Id*. at pp. 1083–1084.)

In *Mosley*, *supra*, 165 Cal.App.4th 1375, the original support order set a former husband's base income at $447,150.  He made at least that amount in the year before filing a request to modify support, which was precipitated by losing his position as a partner in his law firm and taking a job with a housing company where he earned a base salary of $205,000 with a discretionary bonus of zero-to-150 percent of his salary.  (*Id*. at pp. 1380–1381.)  The husband received a six-figure bonus during his first year with the housing company, but it was not certain that bonus would reoccur, particularly given the precarious state of the real estate market at the time.  At issue was whether the husband's past earnings accurately reflected his prospective earnings.  (*Id*. at pp. 1385–1386.)  The answer depended on the likelihood the bonus would reoccur.  (*Id*. at pp. 1386–1387.)

Under the circumstances, the *Mosley*, *supra*, 165 Cal.App.4th 1375 court found a material change in circumstances for purposes of modifying the husband's support obligations. (*Id.* at pp. 1384–1387; see §§ 4058, subd. (a)(1), 4060, 4064.) It held that the "'assumption underlying [the calculation of a parent's annual gross income] is that past income is a good measure of the future income from which the parent must pay support. However, the law recognizes that is not always the case. Thus, the court is given discretion to adjust . . . "the monthly net disposable income figure [if it] does not accurately reflect the . . . *prospective* earnings of the parties at the time the determination of support is made . . . ." [Citations.]'" (*Mosley*, at p. 1385.) The matter was remanded with instructions to determine the husband's monthly support obligation based on his base salary, exclusive of any speculative bonus. However, any bonus the husband received was also required to be considered as part of his gross income for purposes of determining support. Accordingly, on remand the trial court was directed to establish a method for the husband to pay support based on any bonus income he received. That method could be expressed as a percentage of any discretionary bonus actually received. (*Id.* at p. 1387, citing *Ostler-Smith*, *supra*, 223 Cal.App.3d 33.) By including a fixed percentage of the husband's bonus, the children would participate in their father's wealth according to fluctuations in the real estate market. (*Ibid.*)[11]

Like *Riddle*, *supra*, 125 Cal.App.4th 1075 and *Mosley*, *supra*, 165 Cal.App.4th 1375, this case presents "a gloss on . . . sections 4060 and 4064, the two statutes which deal with the problem of calculating fluctuating income for support orders. The aim of section 4060 is to give a trial court discretion to adjust the annual net income required for a support order when dividing net disposable income by 12 'does not accurately reflect the actual or prospective earnings of the parties.' Section 4064 gives a trial court the

---

[11] As pertinent here, the court also observed that a it would be proper to fashion a support order to address potential arrearages as "'a built-in feature,'" to avoid the necessity for the parties regularly to return to court as bonus income varied. (*Mosley*, *supra*, 165 Cal.App.4th at p. 1387; *Ostler-Smith*, *supra*, 223 Cal.App.3d at pp. 41–42.)

authority to adjust a child support order "as appropriate to accommodate seasonal or fluctuating income of either parent." (*Riddle*, at p. 1081, fn. omitted.) The statute is silent, however, on how the adjustment should be made. The calculation of adjustments demands creativity and an understanding of the payor's cash flow. Both statutes are framed in discretionary terms, and "it is well established that the discretion must be a reasonable one, "'exercised along legal lines, taking into consideration the circumstances of the parties, their necessities and the financial ability of the [supporting spouse].'" [Citation.]" (*Ibid.*) The aim is to arrive at a stable number for support, even where the payor's income is unstable. (See *Mosley*, at pp. 1386–1387.) That number must be a reasonable predictor of what the parties will earn in the immediate future. (*Ibid.*; *Riddle*, at p. 1082.) However, "the time period on which income is calculated must be long enough to be *representative*, as distinct from *extraordinary*." (*Riddle*, at p. 1082.) It is an abuse of discretion "to take so small a sliver of time to figure income that the determination essentially becomes arbitrary." (*Id.* at p. 1083.)

Here, the court was presented with evidence—which it credited—that Douglas's income structure had undergone a change from the $285,000 base salary upon which his support obligation was based, to a commission-based structure with no base salary, and no current way accurately to predict his future net monthly income. The only evidence available at the time of the RFO was a single month's gross earnings of $3,179.96, which was $13,000 less than his historical average used to calculate his support obligation. Accordingly, the court's order by which Douglas's support obligation was directly correlated to his variable monthly commissions was a reasonable method going forward. (Cf., *Mosley*, *supra*, 165 Cal.App.4th at p. 1387.)

The court rejected Carol's assertion that Douglas had purposefully become un- or underemployed. It found that, "[i]f Douglas were truly 'actively pursuing a reduction in . . . support by deliberately remaining unemployed and/or underemployed' . . . , the court would have expected a series of modifications decreasing Douglas's support obligations after each change of employment. However, this was not the case." The court also rejected Carol's assertion that Douglas's proposal to pay support based on a

percentage of his income was evidence of a purposeful attempt to avoid support. The court noted that under Douglas's proposed payment structure, Carol would receive as much as 47 percent of each of Douglas's paychecks, plus add-ons. Further, in the event Douglas received $285,000 (the basis for support in the judgment) as an independent contractor, his support obligation would actually exceed the support ordered in the judgment by $4,476 per month.

The record contains evidence which the trial court clearly credited that after Douglas left Buchalter, and after he was terminated by the Manning and Enenstein firms, he accepted the best available alternative position.[12] As he told the court, the employment changes and concomitant reductions in income at all three firms were the result of unilateral decisions by firm management, and he did his best to maximize his income given the available options. Carol presented no evidence that Douglas's job changes were voluntary or that there were more lucrative positions he could have obtained. She merely argued that he had earned more in prior years. The trial court found no evidence Douglas intentionally manipulated his income. In the face of Douglas's good faith efforts, the fact that he had earned more in the past than he may stand to earn in commissions did not demonstrate his current ability to earn more. There is no evidence in the record demonstrating such a purported manipulation. Accordingly, there was no basis to conclude that Douglas's earning capacity exceeded his current earnings, thereby justifying imputed income. (See *In re Marriage of Lim and Carrasco* (2013) 214 Cal.App.4th 768, 775; *Riddle*, *supra*, 125 Cal.App.4th at pp. 1085–1086.)

---

[12] The circumstances surrounding Douglas's move from Buchalter to Manning, and the Manning firm's decision not to renew his contract are not at issue. Nevertheless, they are relevant to Douglas's good faith in attempting to secure equivalent employment in determining whether to impute income. When imputing income, it does not matter whether the payor spouse left a job voluntarily or was fired. (See *Eggers*, *supra*, 131 Cal.App.4th at pp. 700–701; see also *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 998–999.) The reasons a spouse lost the job may be a relevant to the analysis, but they are not controlling. The court determines the payor spouse's earning capacity by evaluating the totality of the circumstances. (See *Eggers*, *supra*, 131 Cal.App.4th at p. 701; *In re Marriage of Stephenson* (1995) 39 Cal.App.4th 71, 81.)

On this record, we find that the trial court did not abuse its discretion in deciding that Douglas's prior earnings did not constitute a representative sample upon which to impute future income. (See *Riddle*, *supra*, 125 Cal.App.4th at p. 1086.)

b.      *New spouse*

Carol also argues that the trial court erroneously failed to consider the income of Douglas's new wife in determining his ability to maintain an equivalent level of support. No error occurred. California law unequivocally states that the income of a new spouse "shall not be considered when . . . modifying spousal support." (§ 4323, subd. (b); see *In re Marriage of Romero* (2002) 99 Cal.App.4th 1436.) A new spouse's income is similarly off bounds with regard to the modification of child support, except in an extraordinary case in which excluding that income would result in extreme and severe hardship to the supported child. (§ 4057.5, subd. (b); *In re Marriage of Knowles* (2009) 178 Cal.App.4th 35, 41 [finding that, absent a factual finding of "extreme and severe hardship to minor child," it was reversible error to consider new spouse's income].) The trial court made no finding of "extraordinary" circumstances here, and Carol made no showing that Sarah would suffer extreme or severe hardship if Douglas's support obligation was formulated to accommodate his newly fluctuating income.

c.      *Reporting requirements*

Carol also takes issue with the modification on the basis that it erroneously assumes that despite Douglas's alleged history of failing to report income, he will satisfy the new reporting requirements, and lacks a contingency in the event Douglas fails accurately to report his income.

First, Carol presented no admissible evidence that Douglas failed in the past accurately to report his income or was in arrears on support. Douglas, on the other hand, presented evidence that he was current in his support payments. Second, the order does provide a specific remedy should Douglas fall short on his reporting requirement: in the event Douglas "*fails to provide both his prior month's paystub(s)* and [support payments], by the fifth of the month, [he] is ordered to pay an additional child support add-on to [Carol] in the amount of $1,000, due by the end of the month. The total

support arrearage, including the $1,000 add-on, will accrue interest at the legal rate."
(Italics added.) This "built-in feature" is not inappropriate and functions, as the court
said, as a "hammer" (if Douglas fails to provide the required documentation and payment
by the fifth of each month, he must pay an additional $1,000 per month, plus interest),
and avoids the need for the parties regularly to return to court. (*Ostler-Smith*, *supra*, 223
Cal.App.3d at pp. 41–42; cf., *Mosley, supra*, 165 Cal.App.4th at p. 1387; *Cheriton*,
*supra*, 92 Cal.App.4th at pp. 296–297.)

2.      *Adherence to child support guideline*

Carol asserts that the trial court erred by failing to adhere to California's
mandatory uniform guideline when it reduced Douglas's child support obligation as to
Sarah from $2,450 per month to a zero base.

a.      *Governing legal principles*

The determination of child support obligations is a highly regulated area of the
law. The "only discretion a trial court possesses is the discretion provided by statute or
rule. [Citations.]" (*In re Marriage of Butler and Gill* (1997) 53 Cal.App.4th 462, 465;
*Cheriton*, *supra*, 92 Cal.App.4th at pp. 282–283.) In determining child support California
courts must adhere to the statewide uniform child support guideline set forth at section
4055. (§§ 4050, 4051, 4052, 4074; *Bodo*, *supra*, 198 Cal.App.4th at p. 385.)
"Guideline" is a misnomer. It is a term of art reflecting mandated requirements with the
intent that application of the formula will yield a presumptively correct amount of child
support. (*In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 183.) Since 1992, the
rule has been that a court may depart from the guideline, "only in the special
circumstances set forth [in the Family Code]." (§ 4052; *In re Marriage of Drake* (1997)
53 Cal.App.4th 1139, 1159 ["present statutory scheme limits broad discretion accorded
the trial court under prior law and channels its remaining discretion within the new
statutory parameters"]; *In re Marriage of de Guigne* (2002) 97 Cal.App.4th 1353, 1361
(*de Guigne*) [court retains discretion to adjust child support orders in individual cases
within statutory parameters as fairness requires]; *Cheriton*, at p. 283 [same].)

15

One instance in which a court may exercise discretion to depart from the presumptively correct guideline formula is a case such as this in which a supporting parent lacks a predictable income stream. The court "may adjust the child support order as appropriate to accommodate seasonal or fluctuating income of either parent." (§ 4064; *Riddle*, *supra*, 125 Cal.App.4th at p. 1081.) Section 4064, together with section 4060, preserves the exercise of judicial discretion to fashion a support order that avoids the necessity of serial modification proceedings on account of ups and downs of a supporting parent's fluctuating income. In such cases, plugging an obligor's past earnings into the "income" component of the guideline formula cannot accurately represent his or her actual or prospective earnings because the figure does not reflect inherent variance in the earnings cycle. Rather, exercising sound discretion, the court must determine a fair and representative time sample from which to calculate an average monthly income that is a reasonable predictor of the obligor's likely immediate prospective earnings. (See §§ 4057, subd. (b)(5), 4060, 4064; *de Guigne*, *supra*, 97 Cal.App.4th at p. 1361 [statutory scheme reflects Legislature's intent to give courts broad discretion to determine when special circumstances apply].)

The difficulty presented here was that the court could not predict whether or when Douglas's monthly net disposable income would approach historical earnings. (*Mosley*, *supra*, 165 Cal.App.4th at p. 1385.) The single month's income Douglas had earned by the time the RFO was decided was simply too short a time upon which competently to predict his annual income under his newly fluctuating pay structure. "It is a manifest abuse of discretion to take so small a sliver of time to figure income that the determination essentially becomes arbitrary." (*Riddle*, 125 Cal.App.4th at p. 1083.) In sum, if past income is not a good measure of a payor's future income, section 4060 permits the court to exercise its discretion to make necessary adjustments. (*Mosley*, at p. 1385; *County of Placer v. Andrade* (1997) 55 Cal.App.4th 1393, 1396.)

Carol also contends the court erred by failing to explain its deviation from guideline. Whenever the court orders a child support amount that differs from the section 4055 formula amount, it "shall state, in writing or on the record: . . . [¶] (1) The amount

of support that would have been ordered under the [section 4055] guideline formula[;] [¶] (2) The reasons the support ordered differs from the guideline formula amount"; and (3) why "the support ordered is consistent with [the child's best interests]." (§ 4056, subds. (a)(1)–(3).) This information is mandatory. (*Rojas v. Mitchell* (1996) 50 Cal.App.4th 1445, 1450, 1452; *Marriage of Hall* (2000) 81 Cal.App.4th 313, 316.) The statement of reasons contemplated by section 4056, subdivision (a)(3) is not just a conclusory finding that the variance from presumptively-correct formula support is in a child's best interests. The court must articulate its reasoning as to why the deviation is in the child's best interests. (*McGinley v. Herman* (1996) 50 Cal.App.4th 936, 945; see *Wilson v. Sh*ea (2001) 87 Cal.App.4th 887, 893 [§ 4056, subds. (a)(2) & (3) satisfied in move-away case by judge's observation that the need to assure the noncustodial parent maintained frequent contact justified varying the formula amount to provide for travel expense].) A child support order that deviates from the presumptively-correct formula amount without an accompanying section 4056, subdivision (a) statement of information and reasons will be reversed on appeal unless the requisite findings can be implied from the record. (See Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2014) ¶¶ 6:498 to 6:499.1, pp. 6-196 to 6-197.)

The court here satisfied the requirements of section 4056, subdivision (a) to the extent possible. First, because of Douglas's fluctuating income, the court noted it was unable to calculate guideline (under § 4056, subd. (a)(1).) As for section 4056, subdivision (a)(2), the court also explained the support order justifiably differed from guideline because there was no way to compute guideline without a representative sample upon which to calculate Douglas's monthly net income. The court also found the *Ostler-Smith* order was in Sarah's best interest, but did not explicitly state why. (§ 4056, subd. (a)(3).) The court's reasoning may be inferred from its observation that Douglas's support obligation must comport with his ability to pay. That requirement was satisfied by the *Ostler-Smith* order. As the court observed, Douglas's support obligation amounts to as much as 47 percent of his monthly pay, plus child support add-ons. This formulation permits Sarah's lifestyle to remain on par with her father's. Moreover, if or

17

when Douglas earns commissions of $285,000, he will pay $5,674 in child support, more than twice the amount provided in the judgment.  The court found this proportionality tied directly to Douglas's earnings, coupled with the duty to pay an additional $1,000 add-on in any month he fails timely to provide proof of his past month's earnings and payment was in Sarah's best interest.  Further, as reflected in an exchange between the court and counsel at the RFO hearing, the structure of the support order further serves Sarah's and Carol's interests because it ensures they will receive support regularly without a need for Douglas to borrow continually (as he has done in the past when unable to make support) to satisfy that obligation.  The parties remain free to return within a few months or a year, to restructure the order once Douglas's earnings are established.  Though cursory and imperfect, we find the court adequately explained its reasons and satisfied the requirements of section 4056, subdivision (a).

3.      *Spousal support*

"'In awarding spousal support, the court must consider the mandatory guidelines of section 4320.  Once the court does so, the ultimate decision as to amount and duration of spousal support rests within its broad discretion and will not be reversed on appeal absent an abuse of that discretion.  [Citation.]'" (*Cheriton*, *supra*, 92 Cal.App.4th at p. 283.)  The court retains broad discretion to modify an award of spousal support.  To obtain a modification, the movant must show a material change of circumstances.  (*In re Marriage of Dietz*, *supra*, 176 Cal.App.4th at p. 398.)  "The 'change of circumstances' which can be considered includes all factors affecting need and ability to pay. [Citations.]" (*In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, 710; *Mosley*, *supra*, 165 Cal.App.4th at pp. 1387–1388.)

Carol argues the trial court failed to consider the section 4320 factors when modifying Douglas's spousal support obligation.[13]  The record reflects otherwise.  In the

---

[13] Section 4320 provides that, in "ordering spousal support . . . , the court shall consider all of the following circumstances:

section of the SOD dedicated to its section 4320 analysis, the court noted that it lacked evidence to permit it to analyze at least 11 statutory factors. The court analyzed the remaining factors. We find the court's analysis and determination based on evidence presented satisfied its obligation under section 4320.

---

"(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:

"(1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.

"(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.

"(b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.

"(c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.

"(d) The needs of each party based on the standard of living established during the marriage.

"(e) The obligations and assets, including the separate property, of each party.

"(f) The duration of the marriage.

"(g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.

"(h) The age and health of the parties.

"(i) Documented evidence of any history of domestic violence . . . .

"(j) The immediate and specific tax consequences to each party.

"(k) The balance of the hardships to each party.

"(l) The goal that the supported party shall be self-supporting within a reasonable period of time. . . .

"(m) The criminal conviction of an abusive spouse . . . .

"(n) Any other factors the court determines are just and equitable."

19

*4.      Adequacy of statement of decision*

Carol contends the trial court's 11-page SOD was deficient, reflects the court's bias against her as a self-represented litigant and ignores the totality of the evidence, and that the court's failure to correct deficiencies constituted reversible error.

The purpose of a SOD is to explain the factual and legal basis for the court's decision.  (Code Civ. Proc., § 632; *In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1318–1319 (*Williamson*); *Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1125–1126 (*Muzquiz*).)  The statement is particularly significant in a family law proceeding, such as this, dealing with modification of support orders.  The SOD "'is our touchstone to determine whether or not the trial court's decision is supported by the facts and the law.'  [Citation.]"  (*In re Marriage of Sellers* (2003) 110 Cal.App.4th 1007, 1010; see *In re Marriage of Reilley* (1987) 196 Cal.App.3d 1119, 1126 [SOD is "useful to guide future decisions because support orders are modifiable"].)  The parties are entitled to understand how the court arrived at the values used to calculate child support.  (*In re Marriage of Hall* (2000) 81 Cal.App.4th 313, 319–321 & fn. 7.)  The SOD need only state the ultimate facts.  (*Williamson*, at p. 1318; *Muzquiz,* at p. 1125.)  In other words, the SOD need only "state the grounds upon which the judgment rests, without necessarily specifying the particular evidence considered by the trial court in reaching its decision."  (*Muzquiz*, at p. 1125.)

In this case there were two principal controverted issues before the court— whether a downward support modification was in order and, if so, the appropriate method for calculating support in light of Douglas's newly fluctuating income.  Carol's request for a statement of decision included nine questions and multiple subparts.  She also filed numerous objections to the proposed SOD which the court considered—and rejected. There was no need for the court to specifically address Carol's questions or objections so long as the SOD fairly disclosed its determination of the pivotal controverted issues. (See *In re Marriage of Ananeh-Firempong* (1990) 219 Cal.App.3d 272, 282.)

We reject Carol's assertion that the SOD was "grossly inadequate" because it failed to "resolve principal controverted issues . . . raised in [her] request for a statement

of decision and . . . contradicts the record." The SOD adequately addressed relevant controverted issues, including those raised by Carol in her request for a SOD and at the January 17, 2013 hearing. The court considered and rejected Carol's objections and issued its own SOD. The statement illuminates the court's reasoning and the legal bases for its decision, and satisfied the court's obligation. The court described the evidence and laid out the reasoning underlying its decision. A SOD need not detail the court's findings on a party's particular objections nor address every statutory factor involved. On the contrary, a SOD need only "state the grounds upon which the judgment rests." (*Muzquiz*, *supra*, 79 Cal.App.4th at p. 1125.) The SOD here satisfied this test.

We also reject Carol's assertion that the SOD reflects the court's bias against her as a self-represented litigant. Our review of the record reveals that the court's decision reflects only its reaction to the arguments and evidence before it, not any bias in favor of either party. The court's reactions were neither unreasonable nor unsound. The fact that the court overruled Carol's objections does not ipso facto establish bias.

5. *Disentitlement doctrine and refusal to set aside October 2010 stipulated judgment*

The disentitlement doctrine is based on the equitable notion that a party may not seek judicial assistance if it "stands in an attitude of contempt to legal orders and processes of the courts . . . . [Citations.]" (*MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277; *In re Claudia S.* (2005) 131 Cal.App.4th 236, 244.) The doctrine ""may be applied where the balance of the equitable concerns makes it a proper sanction."" (*In re A.G.* (2012) 204 Cal.App.4th 1390, 1399.) No formal judgment of contempt is required for the court to exercise its power under the doctrine. (*Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1683.) The trial court has the inherent power to refuse to entertain a party's argument in the face of the party's willful disobedience or obstructive tactics. (*Ibid.*; *In re E.M.* (2012) 204 Cal.App.4th 467, 476–477.)

Carol argued below, as she does here, that the court should have refused to consider the modification request because Douglas repeatedly failed to comply with court orders or to pay support owed. The court did not refuse to address this assertion as the issue of Douglas's noncompliance, if any, with court orders was not presented. The court

observed that Carol had an alternative avenue of recourse in the event she had evidence—none of which she presented—that Douglas had violated court orders. Carol presented no evidence to support her claim that Douglas pursued his RFO in the face of his failure to comply with court orders.

We also reject Carol's assertion that the trial court erred by entering the October 2012 stipulation because the parties failed to provide declarations pursuant to section 4065. Carol forfeited this argument. Where a court enters a child support order that deviates from the presumptively-correct formula amount without providing the information required by section 4056, subdivision (a), the error must be brought to the court's attention in a timely motion to compel compliance with that statute, filed within 10 days of the order. (*Rojas v. Mitchell*, *supra*, 50 Cal.App.4th at p. 1452.) Carol did not take issue with the October 2012 order until after the RFO was filed at the end of November 2012. This was far too late.

In any event, were we to consider Carol's belated argument, we would reject her assertion. Declarations required by section 4065 are required only where the parties stipulate to child support *below guideline*. The October 2012 stipulation provides for the same amount of support for the remaining minor child as in the September 2010 judgment. There is no showing that this amount deviated from guideline.

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

CHANEY, Acting P. J.

MILLER, J.*

---