55 Cal.App.4th 988 (1997)
In re the Marriage of AISHA and HOWARD E. HINMAN.
AISHA OTHMAN, Appellant,
v.
HOWARD E. HINMAN, Respondent.
Docket No. A072357.
Court of Appeals of California, First District, Division Two.
June 12, 1997.
*991 COUNSEL
Aisha Othman, in pro. per., and Robert L. Walker for Appellant.
Howard E. Hinman, in pro. per., for Respondent.
OPINION
RUVOLO, J. 

INTRODUCTION
Aisha Othman[1] appeals from an order requiring her to pay $1,248 in monthly child support to her ex-husband Howard E. Hinman, the custodial parent of their five children.[2] Aisha contends: (1) the court improperly imputed income to her based on earning capacity; and (2) the court incorrectly computed the amount of Aisha's child support obligations. On this record, we find no abuse of discretion and affirm the judgment of the trial court.
In so holding, we decline to adopt a per se rule that the trial court may only consider parental earning capacity upon a showing of bad faith. Instead, we adhere to the plain language of the Family Code which grants the trial *992 court broad discretion to consider parental earning capacity consistent with the best interests of the supported child. (Fam. Code, § 4058, subd. (b).)

BACKGROUND
With this appeal, we find Howard and Aisha Hinman before this court in their eighth case requesting our review of trial court orders arising from the 1990 dissolution of their marriage.[3] Based on the parties' stipulation, a judgment issued on April 24, 1990, awarded Aisha and Howard joint physical and legal custody of their five children, Fairiz, Farah, Julianna, Joshua, and Justin, who were to continue residing in the family home with Howard. Due to ongoing litigation between the parties, this order has been modified on various occasions. The most recent order setting forth Aisha and Howard's rights with respect to the children was entered on February 7, 1994. In this order, the court granted sole legal and physical custody of the children to Howard and allowed Howard to relocate with the children to Bloomington, Indiana. Aisha was awarded supervised eight-hour visits with the children in Indiana once every two months.
On August 9, 1995, Howard filed an order to show cause requesting child support based on Aisha's earning capacity for the four minor children, Farah, Julianna, Joshua, and Justin.[4] The hearing was set for September 13, 1995. In the order to show cause, Howard alleged he had been forced to file for bankruptcy as a result of the costs associated with the dissolution, he anticipated a $25,000 reduction in his gross income, he was suffering *993 hardship from the court's requirement that he pay the costs of Aisha's supervised visits, and he was suffering hardship from his responsibility for Fairiz's college expenses which were only partially satisfied through a scholarship.
Howard requested the court to impute income to Aisha of $43,000 annually based upon her earning capacity. In his declaration, he stated Aisha was earning $44,000 annually while employed at Kemper Insurance before the institution of dissolution proceedings, and $38,400 at her most recent employment with California Casualty Insurance. Howard claimed Aisha purposefully accepted the lower paying job with California Casualty, because of pending spousal and child support proceedings and that her salary at Kemper was a more accurate barometer of her earning capacity.
In further support of the order to show cause, Howard attached the following documents: (1) previous income and expense declarations submitted by Aisha to the trial court; (2) Aisha's resume showing that she held a bachelor's degree in computer science and a diploma in computer science from the MARA Institute of Technology in Malaysia, as well as significant employment experience in the computer field; (3) a letter from an employment agency stating Aisha had an earning potential of between $35,000 and $45,000 annually; (4) a letter from a second employment agency stating Aisha had an earning potential of between $35,000 and $50,000 annually; (5) a computer printout illustrating the effect of imputing income to Aisha on calculating the parties' child support obligations; (6) various letters and memos from Aisha's previous employers showing their satisfaction with her work; and (7) correspondence with Aisha's attorney requesting that Aisha contribute to the children's support.
In response, Aisha submitted her own declaration on September 5, 1995, stating "[It] is hereby point[ed] out that petitioner has not worked for over four years, has three children all under the age of three years old for whom she cares exclusively and that, despite respondent's assertions, that [sic] she would be unable at this time to work at any of the jobs she has held in the past, nor would she be able to reconcile same with her need to care for her children." She disputed Howard's contentions concerning his worsening financial condition and claimed his request to impute $43,000 of annual income to her was "in error by $43,000[]." She did not, however, dispute Howard's description of her employment qualifications, previous salary levels, or her ability to locate work. Aisha submitted a declaration of income and expenses describing both her income and her expenses as zero.
Aisha did not attend the hearing on the order to show cause, however, she made arrangements to be represented by counsel. At the hearing, the court *994 granted Howard's request for child support reasoning: "[W]e have five children being raised by Mr. Hinman in Indiana, four of whom are under the age of [eighteen], and she has started a new family with three new babies. She has brought ... eight kids into the world, and wishes to be responsible for the support of only three. [¶] And of course, you know as well as I do, that that is not the way the laws of the [S]tate of California work. She has to contribute some support to these children. She can't just quit work and create a new family and then use that as an excuse to escape her responsibilities to these other children. [¶] She is a very bright woman. I have seen her testify numerous times, and she is very educated. She speaks English well. She is eminently employable.... [¶] So I am going to impute some income to her because these children do need her support." On September 14, 1995, the court entered an order imputing $3,200 per month of income to Aisha and awarding Howard $1,248 of monthly child support. This appeal followed.

DISCUSSION

I. The Court Did Not Err in Awarding Child Support Based on Earning Capacity

(1a) Aisha contends the court erred in awarding child support based on her earning capacity, rather than her actual earnings. She argues a court may not impute income to a parent, unless the parent is deliberately avoiding his or her financial family responsibilities. (See, e.g., Philbin v. Philbin (1971) 19 Cal. App.3d 115 [96 Cal. Rptr. 408] (Philbin).) (2) We review the trial court's decision to impute income to Aisha based on her earning capacity under an abuse of discretion standard. (In re Marriage of Paulin (1996) 46 Cal. App.4th 1378, 1383 [54 Cal. Rptr.2d 314].) Under this standard, "[t]he appellate court should not substitute its own judgment for that of the trial court; it should determine only if any judge reasonably could have made such an order. [Citation.]" (White v. Marciano (1987) 190 Cal. App.3d 1026, 1033 [235 Cal. Rptr. 779].)
(1b) Historically, some courts have stated the availability of child support awards based on earning capacity is limited to situations where the parent deliberately shirks financial family responsibilities by refusing to accept or seek gainful employment. (See In re Marriage of Williams (1984) 155 Cal. App.3d 57, 62 [202 Cal. Rptr. 10]; Philbin, supra, 19 Cal. App.3d at p. 121.) In 1984, the Legislature enacted the Agnos Child Support Standards Act of 1984 (the Agnos Act) (former Civ. Code, § 4720 et seq., added by Stats. 1984, ch. 1605, § 4, pp. 5664-5672.). Former Civil Code section 4721, subdivision (a) provided that, in determining the mandatory minimum child *995 support award, "the court shall also consider, to the extent consistent with the best interests of the child or children, the earning capacity of either or both parents."[5] Thus, in In re Marriage of Nolte (1987) 191 Cal. App.3d 966, 972-973 [236 Cal. Rptr. 706] (Nolte), the Fifth District held the Philbin rule was altered by the enactment of the Agnos Act mandating consideration of earning capacity to the extent consistent with the child's best interests. (Id. at p. 973; see also In re Marriage of Ilas (1993) 12 Cal. App.4th 1630, 1638 [16 Cal. Rptr.2d 345] (Ilas).)
(3a) In In re Marriage of Regnery (1989) 214 Cal. App.3d 1367, 1372 [263 Cal. Rptr. 243] (Regnery), Division One of the Fourth District concluded the Agnos Act was consistent with prior decisional law, but a reading of the act and the case law together "create[d] a three-prong test before the capacity to earn standard may be applied. Earning capacity is composed of (1) the ability to work, including such factors as age, occupation, skills, education, health, background, work experience and qualifications; (2) the willingness to work exemplified through good efforts, due diligence and meaningful attempts to secure employment; and (3) an opportunity to work which means an employer who is willing to hire."[6] Therefore, although certain factors are to be considered in assessing the existence and extent of a parent's earning capacity, the court in Regnery did not limit the imputation of earning capacity to instances where a finding of actual avoidance of employment has been made.
In Ilas, supra, 12 Cal. App.4th at pages 1638-1639, Division Two of the Fourth District declared: "While deliberate avoidance of family responsibilities is a significant factor in the decision to consider earning capacity [citation], the statute explicitly authorizes consideration of earning capacity in all cases. ([Former Civ. Code,] § 4801, subd. (a)(1).) Accordingly, the trial court's consideration of earning capacity is not limited to cases in which a deliberate attempt to avoid support responsibilities is found."
*996 Division Three of the Fourth District had previously held findings of good faith prevented use of the earning capacity standard. (In re Marriage of Meegan (1992) 11 Cal. App.4th 156, 163 [13 Cal. Rptr.2d 799] (Meegan).) But that position, too, was reexamined by Division Three three years later in In re Marriage of Padilla (1995) 38 Cal. App.4th 1212, 1217-1218 [45 Cal. Rptr.2d 555] (Padilla). In taking the opportunity to reexamine Philbin, the court concluded the language limiting consideration of earning capacity to situations when the parent's unemployment or underemployment is the result of a deliberate attempt to avoid financial family responsibilities consisted of a comment, not a holding or even dicta. Thus, the court opined "Philbin does not require a bad faith finding before earning capacity may be imputed to a parent. Philbin does hold earning capacity may only be considered when a parent unreasonably fails to avail himself or herself of employment possibilities." (Id. at p. 1217, italics omitted.) The court reasoned: "A parent's motivation for reducing available income is irrelevant when the ability and opportunity to adequately and reasonably provide for the child are present." (Id. at p. 1218.)
In abandoning Philbin, the Padilla court adopted the Regnery test for determining whether a court may consider a payor's earning capacity. The court employed the following rationale in doing so: "Public policy supports our conclusion. Because children's interests are a top priority (Fam. Code, § 4053, subd. (a)) and payment of appropriate support is a parent's primary obligation (Fam. Code, § 4053, subds. (a) & (d)), a child support obligation `"must be taken into account whenever an obligor wishes to pursue a different lifestyle or endeavor.... [C]hild ... support [is] an overhead which must be paid first before any other expenses.... [A payor does] not have the right to divest himself [or herself] of his [or her] earning ability at the expense of ... minor children."' [Citations.]" (Padilla, supra, 38 Cal. App.4th at p. 1218, fn. omitted.) The court distinguished its earlier Meegan decision on the basis that it involved a spousal support order "where different policy considerations govern." (Id. at p. 1218, fn. 2.) The court concluded: "Statutory commands and the inherent responsibility parents owe their children lead us to conclude the bad faith rule, as applied to child support, if not ill conceived in the first instance, can no longer be supported. Once persons become parents, their desires for self-realization, self-fulfillment, personal job satisfaction, and other commendable goals must be considered in context of their responsibilities to provide for their children's reasonable needs. If they decide they wish to lead a simpler life, change professions or start a business, they may do so, but only when they satisfy their primary responsibility: providing for the adequate and reasonable needs of their children." (Id. at p. 1220, fn. omitted.)
In In re Marriage of Catalano (1988) 204 Cal. App.3d 543, 555 [251 Cal. Rptr. 370] (Catalano), a panel from this division held "... a court will *997 not base an award on earning capacity as opposed to actual earnings unless the parent appears to be avoiding his or her responsibilities and it would be in the child's best interests to impute the difference in earnings (In re Marriage of Nolte (1987) 191 Cal. App.3d 966, 973 ...; In re Marriage of Barnert (1978) 85 Cal. App.3d 413, 427 ...; cf. Philbin v. Philbin (1971) 19 Cal. App.3d 115, 121...." (Original italics.) Although the Catalano court cited In re Marriage of Nolte (1987) 191 Cal. App.3d 966 [236 Cal. Rptr. 706] for this proposition, Nolte clearly held the Agnos Act altered the Philbin rule eliminating the necessity of a finding of deliberate avoidance of financial family responsibilities. (Nolte, supra, 191 Cal. App.3d at p. 973.) We note the Catalano court failed to refer to the Agnos Act or explain the impact of this relatively new law on this issue. Instead, the citations included only Nolte, and two other cases that predated the Agnos Act.
In In re Marriage of Everett (1990) 220 Cal. App.3d 846, 859 [269 Cal. Rptr. 917] (Everett), a later First District opinion, Division Four expressly considered the effect of the Agnos Act on the Philbin (Philbin, supra, 19 Cal. App.3d 115 [96 Cal. Rptr. 408]) rule and held: "The Agnos Act now permits attribution of `earning capacity' to an unemployed or underemployed parent without specifically narrowing such consideration to deliberate attempts to foil support obligations. [Citation.] ... Thus, under the Agnos Act, the court must consider the earning capacity of a given parent where (1) there is some measurable capacity and (2) it would be in the children's best interests to do so." (See also In re Marriage of Paulin, supra, 46 Cal. App.4th 1378, 1383-1385 [affirming trial court's decision to consider earning capacity where parent remarried and voluntarily ceased employment due to job-related stress].)
Finally, in County of Yolo v. Garcia (1993) 20 Cal. App.4th 1771, 1781-1783 [25 Cal. Rptr.2d 681] (County of Yolo), the Third District challenged the Nolte holding, concluding the Agnos Act reiterated, as opposed to altered, preexisting case law. In holding that the Philbin rule was not vitiated by enactment of former Civil Code section 4721, the court reasoned: "The statute's provision requiring `consider[ation]' of earning capacity is entirely consistent with the existing rule that earning capacity be deemed equivalent to actual income in the absence of evidence of unreasonable failure to seek or accept employment or more remunerative employment." (20 Cal. App.4th at p. 1783.) Nevertheless, the court appeared to modify language contained in Philbin by limiting consideration of earning capacity to cases satisfying an objective standard  the payor unreasonably failed to seek or accept employment opportunities, rather than a subjective standard  the payor deliberately suppressed income in order to avoid financial family responsibilities. (Id. at pp. 1781-1783; see also In re Marriage of Stephenson (1995) 39 Cal. App.4th *998 71, 80 [46 Cal. Rptr.2d 8] [finding the reasoning of County of Yolo persuasive in the context of spousal support where the payor elects early retirement].)
Despite the existence of intra- and inter-district conflict concerning the meaning and continuing vitality of the Philbin rule, our Supreme Court has not yet resolved the issue. In In re Marriage of Simpson (1992) 4 Cal.4th 225, 233 [14 Cal. Rptr.2d 411, 841 P.2d 931] (Simpson), the court expressly declined to decide whether the trial court's authority to consider the payor's earning capacity is limited to situations where the unemployment or underemployment is attributable to a bad faith attempt to shirk family obligations. The issue was not squarely raised in Simpson, because the court held the trial court's finding of bad faith was supported by substantial evidence. (Ibid.) Our Supreme Court did, however, cite the Regnery definition of earning capacity with approval. (Id. at p. 234.) Moreover, in setting forth the debate, the Simpson court recognized "the statutory guidelines governing ... child support do not limit the circumstances under which the trial court may consider the earning capacity of the supporting spouse... with the exception that ... reliance on earning capacity must be `consistent with the best interests of the children.' [Citation.]" (Id. at p. 233.)
Family Code section 4058, subdivision (b) succinctly provides: "The court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children." Despite other courts' efforts to harmonize this statute with Philbin, this language is simply not consistent with language in Philbin limiting consideration of earning capacity to cases in which the payor is deliberately attempting to avoid financial family responsibilities. (See Philbin, supra, 19 Cal. App.3d at p. 121.)
(1c) The plain language of Family Code section 4058, subdivision (b) and the policies underlying the statute permit consideration of a payor's earning capacity, when consistent with the child's best interests, in order to ensure children's needs are met with appropriate levels of support. (See Padilla, supra, 38 Cal. App.4th at p. 1218.) (3b) Our review of the applicable case law reveals an "emerging consensus ... that the only limitations against imputing income to an unemployed or underemployed parent is where the parent in fact has no `earning capacity' ... or relying on earning capacity would not be consistent with the children's best interests. `Bad faith' (deliberate avoidance of family financial responsibilities) is not a condition precedent to imputation of income in setting the amount of child support. [Citations.]" (1 Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1996) ¶ 6:441, pp. 6-125 to 6-126.)
(1d) We hold that subjective motivation for reducing available income is irrelevant to the court's ability to consider a payor's earning capacity. *999 (Padilla, supra, 38 Cal. App.4th at pp. 1217-1218.) We also decline to define the court's authority to consider earning capacity in terms of whether the payor unreasonably failed to seek or accept employment opportunities. (See, e.g., County of Yolo, supra, 20 Cal. App.4th at p. 1783.)
Instead, we follow the precise text of the statute. As long as ability and opportunity to earn exist, as defined by the test set forth in Regnery and approved in Simpson, supra, 4 Cal.4th at page 234, the court has the discretion to consider earning capacity when consistent with the child or children's best interests. In the course of exercising this discretion, the court may consider arguments concerning the payor's motivations or the reasonableness of the payor's actions in light of all the relevant circumstances.
We are not unmindful that imputation of income to an unemployed spouse may place a significant burden on that spouse or those with whom the spouse creates a new family unit. In the case before us we are reminded Aisha has a new family which includes very young children. We also note again that Aisha had five children in her marriage with Howard, all of whom are in Howard's custody and most of whom are minors. The Legislature has declared in Family Code section 4058 that any balancing of these competing interests is vested in the sound discretion of the trial court consistent with the best interests of the supported children. Therefore, we decline the request to adopt a per se rule prohibiting the imputation of income to parents who refrain from employment in order to care for preschool-age children in all cases.[7] Instead, we hold that the question whether earnings should be imputed to an underemployed or unemployed parent is addressed to the sound discretion of the trial court. All circumstances relevant to this determination may be considered by the trial court upon presentation by the parties. However, we are in agreement that a child support obligation "`"must be taken into account whenever an obligor wishes to pursue a different lifestyle or endeavor.... [C]hild ... support [is] an overhead which must be paid first before any other expenses.... [A payor does] not have the right to divest himself [or herself] of his [or her] earning ability at the expense of ... minor children."' [Citations.]" (Padilla, supra, 38 Cal. App.4th at p. 1218.) To the extent the authorities discussed above are inconsistent with this opinion, we must part company with our respected colleagues.
After review of the record in this case, we have determined the trial court's order was not an abuse of discretion. The trial court was presented *1000 with evidence of Aisha's ability and opportunity to work. The evidence showed Aisha had highly marketable employment skills. She possessed two degrees in computer science, significant work experience in the computer field, and at least two employment agencies believed they could find a job placement for her utilizing her knowledge of computers. The evidence also demonstrated that such an award would be consistent with the children's best interests. Howard's income was declining, while his expenses were increasing due to costs associated with the divorce and the cost of college for Fairiz. Aisha's opposition did not dispute her ability or opportunity to work. Nor, did she contend that an award of child support based on her earning capacity would not be in the best interests of Farah, Julianna, Joshua, and Justin. Instead, her opposition rested solely on the fact that she was caring for three young children from a subsequent relationship and felt she would not be able to reconcile working with her need to care for her children. Aisha did not claim she was temporarily disabled from employment due to the birth of her most recent child.
(4) Aisha argues her position is supported by the decision in County of Yolo, supra, 20 Cal. App.4th 1771.[8]County of Yolo is distinguishable, however, because it involved a parent's responsibility to pay restitution for Aid to Families with Dependent Children (AFDC) benefits under Welfare and Institutions Code section 11350. As is clear from the majority opinion in that case, unlike child support under Family Code section 4058, the principal purpose of the reimbursement statute is to "preserve the public fisc." (20 Cal. App.4th at p. 1778.) The best interests of the child on whose behalf benefits were collected are not paramount. Furthermore, the court determined that the reimbursement statute, as applied to Garcia, contravened the welfare scheme's very own work incentive program.
Thus, County of Yolo must be limited to its own unique facts. Our case factually is quite different. As noted, this is not an appeal from an order of AFDC reimbursement. Here, the court properly must take into account the best interests of the child in whose favor the support order is sought. We are not encumbered with a statutory conflict between the reimbursement law and any governmental work incentive program. In County of Yolo, Ms. Garcia was a single parent subsisting solely on AFDC benefits. The court had no evidence whatsoever about Ms. Garcia's opportunities to obtain a minimum wage job. (20 Cal. App.4th at pp. 1786-1787 (conc. opn. of Nicholson, J.).) Thus, the existence of employment opportunity under the Regnery test was not satisfied. (Ibid.)
(1e) None of the factors which the County of Yolo court found so compelling are present here. For example, regardless of whether Aisha's *1001 new "marriage" had been registered with the state, she was not a single parent. Although unemployed, her income and expense declaration listed her expenses as zero. Thus, Aisha was not responsible for her own living expenses or the living expenses of her children. Unlike Garcia, Aisha possessed two degrees in computer science and significant experience in the computer field. Most importantly, evidence was presented to the trial court showing Aisha had the ability and opportunity for employment. The court below found that a support award was in the best interests of Aisha and Howard's five children being raised solely by Howard. Accordingly, Aisha's citation to County of Yolo is unpersuasive.
Finally, Aisha contends the trial court erred because consideration of her earning capacity was not consistent with the best interests of her three resident children from her new marriage. This contention has no merit. In support of this proposition, Aisha cites Nolte, supra, 191 Cal. App.3d at page 970, where the court based its holding, in part, on the lack of evidence that attributing earning capacity to the unemployed, custodial parent was in the child's best interests. In Nolte, however, the court considered the best interests of the child on whose behalf support was being ordered, not the children of the noncustodial parent's second marriage. Family Code section 4058, subdivision (b) does not require awards based on earning capacity to be consistent with the best interests of any child other than the child or children who are the subject of the child support award. Thus, we must reject Aisha's claim.
Based on the evidence of Aisha's employment ability and opportunity presented below and the consistency of the child support award with the best interests of Farah, Julianna, Joshua, and Justin, we conclude the trial court's decision to consider Aisha's earning capacity in computing child support was not an abuse of discretion.

II. The Court Did Not Err in Calculating the Child Support Award

(5) On appeal, Aisha claims the trial court improperly calculated the amount of child support. She contends: (1) the trial court erroneously attributed five federal withholding exemptions to Howard, instead of six;[9] the court should have given Aisha at least a 2 percent time share based on her visitation with the children,[10] the court did not take into account Howard's entitlement to tax deductions for his mortgage interest payments *1002 of $708.49 per month and real property taxes of $113.60 per month; and the court should have given Aisha hardship deductions for the three children residing with Aisha. Thus Aisha concludes, her child support obligations should be $835 per month, rather than the $1,248 per month awarded by the trial court.
Aisha failed, however, to raise any of the above described arguments below, thereby waiving her right to challenge the computation of the child support award on appeal.[11] (See Steven W. v. Matthew S. (1995) 33 Cal. App.4th 1108, 1117 [39 Cal. Rptr.2d 535].) Aisha's opposition to the order to show cause claimed Howard's request to impute $43,000 of income to Aisha based on earning capacity was "in error by $43,000[]." Aisha's opposition did not question the amount of child support requested, she contended no support should be awarded whatsoever. "An appellate court will ordinarily not consider procedural defects or erroneous rulings ... where an objection could have been, but was not, presented to the lower court by some appropriate method. [Citations.]" (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 394, p. 444.) Failure to object to the ruling or proceeding is the most obvious type of implied waiver. (Id. at § 307, p. 317.) Accordingly, Aisha is foreclosed from challenging the computation of the child support award on appeal.

*1003 III. Sanctions, Attorney Fees, and Costs

(6) Howard requests attorney fees and sanctions, claiming the instant appeal is frivolous. We disagree. California Rules of Court, rule 26(e) authorizes imposition of sanctions when it is found that the appeal "is frivolous or taken solely for purposes of delay, or for an unreasonable infraction of the rules governing appeals." As a rule, "... an appeal should be held to be frivolous only when it is prosecuted for an improper motive  to harass the respondent or delay the effect of an adverse judgment  or when it indisputably has no merit  when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (In re Marriage of Flaherty (1982) 31 Cal.3d 637, 650-651 [183 Cal. Rptr. 508, 646 P.2d 179].) Given the conflicting authority governing the court's ability to consider earning capacity in the computation of child support, we hold that Aisha's appeal was not frivolous. Accordingly, Howard's request for fees and sanctions is denied.
In her opening brief, Aisha also requests that we impose attorney fees and sanctions against Howard. Given the outcome of this appeal, we deny Aisha's request.[12] Aisha's request that trial court judge Judith Whitmer Kozloski be disqualified from this case is also denied.

DISPOSITION
The judgment of the trial court is affirmed. Howard shall recover costs on appeal.
Haerle, Acting P.J., and Lambden, J., concurred.
Appellant's petition for review by the Supreme Court was denied August 27, 1997.
NOTES
[1] We use the parties' first names only to avoid confusion and to assist the reader. Accordingly, no disrespect for the litigants should be inferred from such usage. (Cf. In re Marriage of Smith (1990) 225 Cal. App.3d 469, 475-476, fn. 1 [274 Cal. Rptr. 911].) We note that Aisha now refers to herself as Aisha Othman.
[2] Although Howard is not the biological father of the two older children, Fairiz and Farah, this court upheld a judgment granting him joint custody of these children. (In re Marriage of Hinman (1992) 6 Cal. App.4th 711 [8 Cal. Rptr.2d 245] [by alleging in her dissolution petition that the children were of the marriage and stipulating to the judgment, wife invoked the court's subject matter jurisdiction over children from a prior relationship].) For the sake of simplicity, we shall refer to all five children as Aisha and Howard's children.
[3] In re Marriage of Hinman (nonpublished portion of partially published opinion affirming a number of postjudgment orders including those relating to child custody, visitation, attorney fees and appointment of counsel for the children with minor modifications) (Hinman I); for published portion see In re Marriage of Hinman, supra, 6 Cal. App.4th 711 (assertion of subject matter jurisdiction over children from a prior relationship proper under the circumstances); In re Marriage of Hinman (Nov. 30, 1992) A053879 (nonpub. opn.) (dismissing appeal from order denying Aisha's request for return of passports and affirming order requiring Aisha to pay 50 percent of the children's attorney fees) (Hinman II); In re Marriage of Hinman (Oct. 25, 1991) A055065 (nonpub. opn.) (appeal from modification of custody/visitation order abandoned in the trial court) (Hinman III); In re Marriage of Hinman (May 13, 1992) A057590 (nonpub. opn.) (appeal from modification of custody/visitation order abandoned in the trial court) (Hinman IV); In re Marriage of Hinman (July 12, 1994) A065452 (nonpub. opn.) (appeal from modification of custody/visitation order and order declaring Aisha to be a vexatious litigant dismissed pursuant to default) (Hinman V); Hinman v. Superior Court (Dec. 27, 1995) A072586 (nonpub. opn.) (petition for writ of mandate/stay to require trial court to enforce order declaring Aisha to be a vexatious litigant denied) (Hinman VI); Othman v. Superior Court (Jan. 19, 1996) A072821 (nonpub. opn.) (petition for writ of mandate/stay challenging order declaring Aisha to be a vexatious litigant, order requiring Aisha to pay child support, and order denying Aisha's motion to disqualify Judge Kozloski denied) (Hinman VII).
[4] Howard did not pursue child support for Fairiz, who would have been 18 years old at the time of the scheduled child support hearing.
[5] The mandatory "shall" was replaced with the discretionary "may" by a 1992 amendment codified in former Civil Code section 4721, subdivision (f)(2) (Stats. 1992, ch. 46, § 9), which was recodified without substantive change in former Civil Code, § 4720.2 (Stats. 1991, ch. 110, § 13, pp. 604-609), former Family Code section 4058 (Stats. 1992, ch. 162, § 10), and current Family Code section 4058, subdivision (b) (Stats. 1993, ch. 219, § 138) ("The court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children.").
[6] Although Regnery sets forth a three-prong test consisting of ability, willingness, and opportunity, the court held earning capacity can be considered when only ability and opportunity are present. ("When the payor is unwilling to pay and the other two factors are present, the court may apply the earnings capacity standard to deter the shirking of one's family obligations." [214 Cal. App.3d at p. 1373, original italics.]) Thus, Regnery is more accurately described as a two-prong test.
[7] At oral argument, Aisha raised the possibility that allowing income to be imputed to the primary caretaker of preschool-age children might unfairly burden parents whose religious beliefs prohibit the use of birth control. She did not, however, raise this issue below.
[8] Aisha also cites In re Marriage of Touchstone (Cal. App.), a case that was depublished by the Supreme Court on August 10, 1990.
[9] Aisha argues Howard could also take an exemption on behalf of 18-year-old Fairiz, because he was a full-time student.
[10] In the order to show cause, Howard declared Aisha had only visited the children for a total of 16 hours in the last 17 months.
[11] Aisha attempts to excuse her failure to raise issues in her opposition by arguing that, because of her absence at the hearing, she "did not have an opportunity to object personally to the manner in which the support was computed; and it is obvious from the transcript of the hearing that the attorney who appeared for her pro bono was not prepared to make these objections." (Original italics.) The record shows, however, that Aisha requested the court excuse her appearance due to the recent birth of her eighth child. In apparent contradiction to her request to be excused from the hearing, Aisha also requested a three-month continuance of the hearing "to after December 13, 1995, preferably a Tuesday afternoon." Aisha requested that such a continuance only be granted, however, if the trial court determined Howard's requests were proper. The hearing went forward as scheduled on September 13, 1995. Aisha was not present, but arranged for counsel to represent her at the hearing. Although Aisha's attorney remarked, "For the record [Aisha] did request to be allowed to appear," he proceeded to argue the merits of the order to show cause without moving for a continuance. On appeal, Aisha does not claim the court should have continued the hearing, as opposed to excusing her appearance. Thus, she has waived her right to contest this issue on appeal. (See Kim v. Sumitomo Bank (1993) 17 Cal. App.4th 974, 979 [21 Cal. Rptr.2d 834].) Even if this issue were properly raised, however, trial courts are vested with broad discretion to determine whether to grant a continuance. The granting or refusal of a continuance is a matter of discretion with the trial court and its ruling will not be disturbed unless a clear abuse of that discretion is shown. (Schlothan v. Rusalem (1953) 41 Cal.2d 414, 417 [260 P.2d 68].) Aisha's equivocal request that, in the event the trial court ruled against her, she be granted a three-month continuance would have served no purpose other than to delay the proceedings. Thus, the trial court properly excused Aisha's appearance and went forward with the hearing as scheduled. Aisha cannot now complain that the failure to object to the computation of the child support award was caused by her absence.
[12] Aisha also filed a motion for attorney fees on April 22, 1996. The motion was denied by this court on May 2, 1996.