Filed 12/30/15  D.M. v. L.A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| D.M.,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>L.A.,<br><br>Defendant and Appellant. | D067593<br><br><br>(Super. Ct. No. DN126772) |

APPEAL from an order of the Superior Court of San Diego County, William Wood, Judge.  Affirmed.

L.A., in pro. per, for Defendant and Appellant.

D.M., in pro. per., for Plaintiff and Respondent.

L.A. (Mother), in propria persona, appeals an order denying, in part, her request for modification of child support owed by D.M. (Father) for their minor son, R.  On appeal, she contends that: (1) the trial court abused its discretion by finding Father could retire before age 65 and by not imputing to him his pre-retirement income or attributing to him income based on his capacity to earn income; (2) the trial court abused its

discretion by not considering Father's standard of living and/or applying Family Code[1] section 4057, subdivision (b)(3), to adjust the guideline child support amount upward based on the disparity in the wealth and income of Father and Mother; (3) the special master and trial court denied her rights to due process of law and discovery by denying her an opportunity to review Father's family trust document; (4) the trial court abused its discretion by not considering that trust's corpus in determining Father's income available for child support; and (5) the trial court erred by denying her requests for awards of attorney fees, psychologist fees, and prejudgment interest.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father apparently began a relationship in 1999 and had a son, R., in 2001. Father owned a hard money loan business, investing in loans to borrowers at high interest rates secured by their real estate. Mother apparently has been unemployed since their son's birth.

On January 1, 2011, they stipulated that Father would pay Mother $700 per month in child support beginning February 1, 2011.[2] In June 2012, Mother apparently filed her instant request for an order modifying child support, visitation, and attorney fees.[3] In

---

[1] All statutory references are to the Family Code unless otherwise specified.

[2] The record on appeal is unclear regarding the percentage of time their son spent in Father's custody and in Mother's custody at that time. However, the trial court's statement of decision in this case supports an inference that from 2011 through October 31, 2012, Father had custody 76 percent of the time and Mother had custody 24 percent of the time.

[3] The record on appeal does not contain a copy of Mother's request.

July 2012, Father filed a request for modification of visitation. At an October 16, 2012, hearing, the trial court issued custody and visitation orders, finding Father is the primary custodial parent and Mother had a 24 percent time share from July 1, 2012, through October 31, 2012, and would have a 29 percent time share beginning November 1, 2012. At that hearing, the court also appointed a special master, Marc Kaplan, to determine the parties' income available for child support. Kaplan lodged with the court a report dated May 28, 2014, and another report dated September 8, 2014.

On September 8, 2014, following multiple continuances, the trial court heard the remaining issues in this case, including Mother's requests for modification of Father's child support obligation and awards of attorney fees, psychologist fees, and prejudgment interest. On December 11, 2014, the court issued its statement of decision and order. The court adopted Kaplan's findings regarding income available for support and imputed income to Mother in the amount of $1,560 per month.

The court found Father closed his mortgage business in 2013 and retired at age 62. In 2013, he also established an estate plan, irrevocably transferring the bulk of his assets to a trust, the M. family legacy trust, for the benefit of his two children (an adult son and R.). Based on that estate plan, Father transferred, or sold, income-producing assets to the trust in return for a note paying him 3 percent annual interest, and he must collect at least $10,000 per year of that interest from the trust (with any unpaid accrued interest presumably accumulating). Kaplan found Father's estate plan worked well for estate purposes, for liability insulation and asset protection, and to minimize Father's income available for child support. Although Kaplan concluded Father's gift was not done to

3

evade child support, the court found "Father's estate plan is also motivated to reduce his income available for support."

The court declined to impute income to Father based on his earning capacity for any ability or opportunity to work in the hard money lending business. However, it imputed income to Father based on his transfer of assets to the trust based on a *Destein*[4] analysis (i.e., 3 percent annual interest based on value of assets transferred to the trust). In so doing, the court found "Father may not voluntarily transfer away income in a fashion that reduces his child support obligation." The court then adopted Kaplan's findings regarding income available for support. The court followed child support guidelines, setting Father's child support obligations at $839 per month for the period of July 1, 2012, through October 31, 2012, $ 1,110 per month for the period of November 1, 2012, through December 31, 2012, $1,227 per month for the period of January 1, 2013, through December 31, 2013, and $1,074 per month beginning January 1, 2014. Based on those calculations of Father's child support obligations, it concluded he owed a total of $12,188 in child support payment arrears. The court also denied Mother's requests for awards of attorney fees and psychologist fees (except for $1,000). Mother filed a motion for reconsideration, which the court apparently denied. She timely filed a notice of appeal challenging the court's December 11, 2014, order.

---

4       *In re Marriage of Destein* (2001) 91 Cal.App.4th 1385.

4

DISCUSSION

I

*Presumption of Correctness and Standards of Review*

*Presumption of correctness.*  A trial court's judgment or order is presumed to be

correct.  In *Denham v. Superior Court* (1970) 2 Cal.3d 557, the court stated:

> "[I]t is settled that: 'A judgment or order of the lower court is
> *presumed correct*.  All intendments and presumptions are indulged
> to support it on matters as to which the record is silent, and error
> must be affirmatively shown [by the appellant].  This is not only a
> general principle of appellate practice but an ingredient of the
> constitutional doctrine of reversible error.' " (*Id*. at p. 564.)

"The burden of affirmatively demonstrating error is on the appellant." (*Fundamental*

*Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.)  "An appellant

must provide an argument and legal authority to support his contentions.  This burden

requires more than a mere assertion that the judgment is wrong.  'Issues do not have a life

of their own:  If they are not raised or supported by argument or citation to authority,

[they are] . . . waived.'  [Citation.]  It is not our place to construct theories or arguments to

undermine the judgment and defeat the presumption of correctness.  When an appellant

fails to raise a point, or asserts it but fails to support it with reasoned argument and

citations to authority, we treat the point as waived." (*Benach v. County of Los Angeles*

(2007) 149 Cal.App.4th 836, 852.)

"Where a point is merely asserted by [appellant] without any [substantive]

argument of or authority for its proposition, it is deemed to be without foundation and

requires no discussion." (*People v. Ham* (1970) 7 Cal.App.3d 768, 783, disapproved on

5

another ground in *People v. Compton* (1971) 6 Cal.3d 55, 60, fn. 3.) "Issues do not have a life of their own: if they are not raised or supported by [substantive] argument or citation to authority, we consider the issues waived." (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99; see *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 ["[w]hen an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary"]; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [contention was deemed waived because "[a]ppellant did not formulate a coherent legal argument nor did she cite any supporting authority"]; *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1301, fn. 2 ["[t]he dearth of true legal analysis in her appellate briefs amounts to a waiver of the [contention] and we treat it as such"]; *Bayside Auto & Truck Sales, Inc. v. Department of Transportation* (1993) 21 Cal.App.4th 561, 571.) Appellants acting in propria persona are held to the same standards as those represented by counsel. (See, e.g., *City of Los Angeles v. Glair* (2007) 153 Cal.App.4th 813, 819.)

*Substantial evidence standard of review*. If an appellant challenges a finding for insufficiency of the evidence to support it, he or she is required to set forth in the appellant's opening brief all the material evidence on that issue or finding and not merely evidence favorable to his or her position. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) "In furtherance of its burden, the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment. [Citation.] Further, the burden to provide a fair summary of the evidence 'grows with the complexity of the record. [Citation.]' " (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640,

6

1658.) An appellant must state fully, with transcript citations, the evidence claimed to be insufficient to support the trial court's findings. (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887.) Unless this is done, the asserted error is deemed waived. (*Foreman & Clark Corp.*, at p. 881.) "An appellate court will consider the sufficiency of the evidence to support a given finding only after a party tenders such an issue together with a fair summary of the evidence bearing on the challenged finding, particularly including evidence that arguably *supports* it." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409-410.) Furthermore, "[a] party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable." (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.) If the appellant fails to do so, the reviewing court may deem the substantial evidence contention to have been waived. (*Ibid.*; *Foreman & Clark Corp.*, at p. 881.)

In determining whether a trial court erred in making findings on disputed factual questions, we apply the substantial evidence standard of review. (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053.) In so doing, we review the record, and draw reasonable inferences to support the judgment. (*Ibid.*) To be substantial, evidence must be reasonable in nature, credible, and of solid value. (*DiMartino v. City of Orinda* (2000) 80 Cal.App.4th 329, 336; *Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) The testimony of a single witness may constitute substantial evidence. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.) On appeal, we do not evaluate the credibility of the witnesses or reweigh the evidence regardless of whether the issues were tried on

7

affidavits or live testimony, and defer to the trial court's findings if supported by substantial evidence. (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968 (*Lenk*); *Bolkiah v. Superior Court* (1999) 74 Cal.App.4th 984, 1000 (*Bolkiah*); *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631 (*Howard*).) To the extent historical facts are undisputed but different inferences may be drawn from the evidence, we cannot make our own inferences but must accept the trial court's resolution of conflicting inferences. (*In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292, 301 (*Providian*).)

*Abuse of discretion standard of review*. In child support cases, a trial court's decision whether to impute income to a parent, along with most other decisions, is reviewed for abuse of discretion. (*In re Marriage of Destein*, *supra*, 91 Cal.App.4th at p. 1393; *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 994 (*Hinman*); cf. *In re Marriage of Simpson* (1992) 4 Cal.4th 225, 234 [spousal support].) Under the abuse of discretion standard of review, we may not substitute our own judgment for that of the trial court. (*Hinman*, at p. 994.) Rather, we determine only if any judge reasonably could have made such a decision. (*Ibid*.)

*De novo standard of review*. When the relevant or decisive facts are undisputed, the legal significance of those facts is a question of law. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.) The correct interpretation of a statute is a question of law. (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 81.) We review a trial court's decisions regarding questions of law de novo, or independently, and are free to draw our own conclusions. (*Ghirardo*, at p. 799.)

8

*Father's Retirement and Trial Court's Failure to Impute Income to Him*

Mother contends the trial court erred by finding Father could retire before age 65 and by not imputing to him his pre-retirement income or attributing to him income based on his capacity to earn income. She argues: (1) the court abused its discretion by making those decisions; (2) there is insufficient evidence to support the court's findings; and (3) we, as an appellate court, should conduct a de novo review of the record and independently determine whether Father should be allowed to retire at age 62 for purposes of calculating his child support obligations.

A

*Father's retirement.* The trial court found Father closed his mortgage business in 2013 and retired at age 62. It stated: "It is not disputed that Father closed his mortgage collection business, transferred collections to another independent entity and is no longer placing loans for clients." The court found all those transactions were arm's-length transactions. With Father's business closed, Mother asked the court to impute income to Father, but submitted no evidence showing he is a "W-2 employee" (i.e., receives wages or a salary) or other income from his former industry. Based on the evidence before it, the court declined to impute income to Father based on his earning capacity for any ability or opportunity to work in the hard money lending business.

Mother has not carried her burden on appeal to show either that there is insufficient evidence to support the trial court's factual findings or that the court abused its discretion by concluding Father could retire at age 62 without imputing to him any

salary or other earned income based on his pre-retirement income or otherwise.[5]

Although she cites evidence purportedly showing Father continues to work in the hard money lending business (e.g., the website of Financial Freedom Loans, LLC), there is other evidence to the contrary and the court reasonably found that other evidence credible and persuasive.[6] Mother has not carried her burden on appeal to show there is insufficient evidence to support the court's finding Father has retired from that business.

Although Mother cites *In re Marriage of Reynolds* (1998) 63 Cal.App.4th 1373 in support of her argument, that case supports the trial court's decision that Father could retire at age 62 (or 61). *Reynolds* noted that although a supporting spouse cannot deliberately shirk support obligations by refusing to work or prematurely retiring, a bona fide retirement may be a material change in circumstances justifying a modification of support and the supporting spouse should not be forced to continue working. (*Id*. at p. 1379.) Although in the circumstances of that case the court held no one should be required to work after the usual retirement age of 65 to pay the same level of spousal support as when employed, it did *not* hold a bona fide retirement cannot occur before the age of 65 under any circumstances. (*Id*. at p. 1378.) We conclude the trial court did not

---

5     Although Mother asserts Father was only 61 years old at the time of his 2013 retirement, she does not cite any definitive evidence to support that assertion. Accordingly, we presume the court was correct when it considered him to be 62 years old at that time. In any event, our analysis of the court's decision would be the same whether Father was 61 or 62 years old at the time of his retirement.

6     For example, Father declared he has retired from his business and will, in fact, be earning more income from his 401(k) retirement plan than he had earned in recent years working for his business.

abuse its discretion by concluding Father, in the circumstances of this case, retired in good faith at age 62 (or 61) and should not be required to continue working thereafter simply to continue paying child support at a rate equal to his pre-retirement amount. We also conclude the court did not abuse its discretion by not imputing to Father earned income at or near the level he earned before his retirement.

B

*Imputed income*. Mother also cites *Hinman, supra,* 55 Cal.App.4th 988 in support of her argument that income should be imputed to Father based on his earning capacity despite his retirement. Although *Hinman* held trial courts have "broad discretion to consider parental earning capacity consistent with the best interests of the supported child" (*id*. at p. 992), it did *not* hold that a trial court is precluded from finding a parent has retired in good faith and exercising its discretion to not impute income to him or her based on earning capacity. Neither *Hinman* nor Mother's arguments persuade us the trial court abused its discretion by not imputing income to Father based on his earning capacity in the circumstances of this case.

Furthermore, contrary to Mother's request, we decline to review the evidence in the record de novo and reach conclusions contrary to the trial court's factual findings and inferences. On appeal, we do not evaluate the credibility of the witnesses or reweigh the evidence and instead we defer to the trial court's findings if supported by substantial evidence. (*Lenk*, *supra*, 89 Cal.App.4th at p. 968; *Bolkiah*, *supra*, 74 Cal.App.4th at p. 1000; *Howard*, *supra*, 72 Cal.App.4th at p. 631.) Likewise, even if different inferences may be drawn from disputed or undisputed evidence, we cannot make our own inferences

11

but must accept the trial court's resolution of conflicting inferences. (*Providian*, *supra*, 96 Cal.App.4th at p. 301.)

III

*Child Support Based on Child's Standard of Living*

Mother contends the trial court abused its discretion by not considering Father's standard of living and/or applying section 4057, subdivision (b)(3), to adjust the guideline child support amount upward based on the disparity in the wealth and income of Father and Mother.[7]

Section 4057, subdivision (b), provides that the presumed guideline amount of child support can be rebutted by evidence showing that amount would be unjust or inappropriate in the particular case when the supporting parent "has an extraordinarily high income and the amount determined under the formula would exceed the needs of the children." (§ 4057, subd. (b)(3).) However, that provision, by its terms, would generally apply only to reduce the amount of the guideline child support to be paid a parent with an extraordinarily high income if he or she shows the child's needs do not require that guideline amount. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 297; *McGinley v. Herman* (1996) 50 Cal.App.4th 936, 944-945.)

Rather, Mother's primary argument appears to be that the trial court did not adequately consider both parents' station in life or standard of living in setting Father's

---

7    Although Mother's brief cites section 4075, subdivision (b)(3)(f), a subdivision that does not exist, we believe that citation is a typographical error and presume she instead intended to cite section 4057, subdivision (b)(3).

12

child support obligation. Section 4053, subdivision (a), provides: "A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life." Similarly, section 4053, subdivision (f), provides: "Children should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children." Section 4053, subdivision (g), similarly provides child support orders "should minimize significant disparities in the children's living standards in the two homes."

Mother argues that while she lives in a rented apartment, is unemployed, and has depleted her savings, Father lives in a "mansion" and had a pre-retirement (i.e., before the transfer to the trust) net worth exceeding $13 million dollars. However, the record shows the trial court had ample evidence showing the assets, income, and living standards of both Mother and Father. It received and considered two reports filed by Kaplan, the special master, that discussed in great detail those issues. The court clearly was aware of the significant disparity in the wealth and standards of living of both parents and, in awarding child support to Mother, implicitly considered those factors. We presume the trial court's decision is correct. (*Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564.) Mother does not cite any affirmative evidence in the record showing the court did not consider those factors in deciding Father's child support obligations. We conclude she has not carried her burden on appeal to show the trial court erred as she asserts. (*Fundamental Investment etc. Realty Fund v. Gradow*, *supra*, 28 Cal.App.4th at p. 971.)

13

To the extent Mother requests we independently consider the parties' disparity of wealth and standards of living, we decline to review the evidence in the record de novo and reach conclusions contrary to the trial court's factual findings and inferences. On appeal, we do not evaluate the credibility of the witnesses or reweigh the evidence, and defer to the trial court's findings if supported by substantial evidence. (*Lenk*, *supra*, 89 Cal.App.4th at p. 968; *Bolkiah*, *supra*, 74 Cal.App.4th at p. 1000; *Howard*, *supra*, 72 Cal.App.4th at p. 631.) Even if different inferences may be drawn from disputed or undisputed evidence, we cannot make our own inferences but must accept the trial court's resolution of conflicting inferences. (*Providian*, *supra*, 96 Cal.App.4th at p. 301.)

IV

*Due Process and Discovery Rights*

Mother contends the special master and trial court denied her rights to due process of law and discovery by denying her an opportunity to review Father's family trust document. She initially argues she did not consent to the appointment of Kaplan as a special master. However, the record on appeal does not include either a minute order or a reporter's transcript for the October 16, 2012, hearing at which Kaplan was appointed as a special master. Mother cannot, and does not, cite to any evidence in the record affirmatively showing that neither she nor her counsel concurred in Kaplan's appointment at that hearing.

Mother also argues Kaplan and/or the trial court wrongfully denied her an opportunity to review the M. family trust document and conduct discovery regarding all of Father's financial accounts, business holdings, and other investments. She asserts that

14

when she met with Kaplan, he "quickly flashed" a document he purported to be the M. family trust and denied her request for a copy of it. She further asserts Kaplan denied her an opportunity to read that document. She also notes a copy of the trust was not attached to Kaplan's final report. Mother argues Kaplan's conduct denied her discovery rights and precluded her from having a trust expert review that trust on her behalf, speculating that its provisions may not fully protect her son as a beneficiary.

We conclude Mother has forfeited or waived her contention by not showing she filed a motion to compel discovery of the trust document or otherwise objected to the purported violation of her discovery rights. (*Hepner v. Franchise Tax Bd.* (1997) 52 Cal.App.4th 1475, 1486 ["[p]oints not raised in the trial court will not be considered on appeal"].) Furthermore, to the extent she asserts she filed a motion to compel, she has not provided an adequate record on appeal that includes that motion or any other evidence showing she timely objected to the purported violation of her discovery rights.[8] Although her assertions of fact and procedure ostensibly refer to matters within the record on appeal, her brief does *not* contain adequate citations to the appellate record in violation of California Rules of Court rule 8.204(a)(1)(C). "If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be

---

[8]    Mother's opening appellant's brief provides only one citation to the record in support of her assertion she filed a motion to compel. In her declaration in support of her motion for reconsideration, Mother asserts: "I never received a copy [of the trust] via discovery, despite repeated requests [and] filing a Motion to Compel Discovery of the [M. family trust] document." That sole citation is insufficient for us to determine whether she, in fact, filed such a motion, on what grounds that motion was filed, and how the trial court ruled on that purported motion.

15

stricken and the argument deemed to have been waived." (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856; see *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.) Accordingly, to the extent Mother's contentions do not contain adequate supporting citations to the record on appeal, we consider those contentions to have been waived. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247; *City of Lincoln*, at p. 1239; *Duarte*, at p. 856; *Guthrey*, at p. 1115.) Finally, we note that the fact she filed this appeal in propria persona does not exempt her from compliance with established appellate rules. (*Nwosu*, at pp. 1246-1247 [in propria persona litigants must follow the same procedural rules as attorneys].) We conclude Mother has not carried her burden on appeal to show either the special master or the trial court denied her rights to due process of law and discovery by denying her an opportunity to review Father's family trust document and conduct discovery regarding all of Father's financial accounts, business holdings, and other investments.

V

*Trust Corpus*

Mother contends the trial court abused its discretion by not considering the corpus of the M. family trust in determining Father's income available for child support. However, the record refutes her contention. The trial court found that in 2013 Father established an estate plan, irrevocably transferring the bulk of his assets to the M. family trust for the benefit of his two children (an adult son and R.). In particular, the court found Father transferred, or sold, income-producing assets to the trust in return for a note

16

paying him 3 percent annual interest. Kaplan found Father's estate plan worked well for estate purposes, for liability insulation and asset protection, and to minimize Father's income available for child support. Although Kaplan concluded Father's gift was not done to evade child support, the court found "Father's estate plan is also motivated to reduce his income available for support." It stated: "The transfer moves the assets and income to others, including the parties' minor child (although at some future point in time, presumably after he emancipates), and shifts income away from Mother who has a 29 percent timeshare with the minor." The court imputed income to Father based on his transfer of assets to the trust using a *Destein* analysis (i.e., 3 percent annual interest based on value of assets transferred to the trust). In so doing, the court found "Father may not voluntarily transfer away income in a fashion that reduces his child support obligation." The court then adopted Kaplan's findings regarding income available for support and awarded Mother child support.

Contrary to Mother's assertion, the record shows the trial court did, in fact, consider Father's transfer of assets to the M. family trust in determining income available for child support. Specifically, it imputed to Father 3 percent annual interest based on the value of those transferred assets. Mother does not show the court abused its discretion by not imputing greater income to Father based on that trust transfer (e.g., by not considering the trust's corpus to be Father's assets) for purposes of determining his child support obligations. *Ventura County Dept. of Child Support Services v. Brown* (2004) 117 Cal.App.4th 144, cited by Mother, is inapposite to this case and does not persuade us the court erred as she asserts.

To the extent Mother requests we independently attribute the trust's corpus to Father and make a child support determination other than that made by the trial court, we decline to review the evidence in the record de novo and reach conclusions contrary to the trial court's factual findings and inferences. On appeal, we do not evaluate the credibility of the witnesses or reweigh the evidence and instead we defer to the trial court's findings if supported by substantial evidence. (*Lenk*, *supra*, 89 Cal.App.4th at p. 968; *Bolkiah*, *supra*, 74 Cal.App.4th at p. 1000; *Howard*, *supra*, 72 Cal.App.4th at p. 631.) Likewise, even if different inferences may be drawn from disputed or undisputed evidence, we cannot make our own inferences but must accept the trial court's resolution of conflicting inferences. (*Providian*, *supra*, 96 Cal.App.4th at p. 301.) Under the abuse of discretion standard of review, we may not substitute our own judgment for that of the trial court. (*Hinman*, *supra*, 55 Cal.App.4th at p. 994.) Based on the record, we conclude the court did not abuse its discretion by imputing income to Father pursuant to *Destein* based his transfer of assets to the trust.

VI

*Attorney Fees and Psychologist Fees*

Mother contends the trial court erred by denying her requests for awards of attorney fees and psychologist fees.

A

*Attorney fees and costs*. The trial court denied Mother's request for an award of $10,000 in attorney fees, stating in part:

18

"[A] declaration from [Mother's] last attorney, Jack A. Love . . . declares: 'Based on the history of professional services rendered, Mother has paid a total of $5,000.00 in attorney fees from January 17, 2013, through October 10, 2013.' There are no invoices or worksheets in support of Mr. Love's fees attached to his declaration. The court finds that Mother's request for reimbursement of Mr. Love's fees is insufficient pursuant to [former] California Rule[s] of Court [rule] 5.93. The request for Mr. Love's fees is denied.

"Additional attachments to Mother's FL-158 include invoices submitted to Mother from the firm of Kraffert & Schaffer, LLP for the months of August 1, 2012 and October 1, 2012 . . . and indicate total payment and adjustments to Mother's account of $3,000.00 and a balance due of $3,205.50. The court finds that Mother's request for reimbursement of Kraffert & Schaffer fees is insufficient pursuant to [former] California Rule[s] of Court [rule] 5.93. The request for reimbursement of these fees is denied."

Former California Rules of Court rule 5.93, cited by the trial court, is now numbered rule 5.427 and provides in part: "The party requesting attorney's fees and costs must provide the court with sufficient information about the attorney's hourly billing rate; the nature of the litigation; the attorney's experience in the particular type of work demanded; the fees and costs incurred or anticipated; and why the requested fees and costs are just, necessary, and reasonable." (Cal. Rules of Court, rule 5.427(b)(2).) However, Mother does not show her request for attorney fees complied with that rule. Because she has not shown the trial court erred by denying her request for an award of attorney fees based on her noncompliance with the applicable rule, we conclude the court did not abuse its discretion by denying her request.

To the extent Mother requests we independently consider her request for an award of attorney fees, we decline to review de novo the record on appeal and reach conclusions contrary to the trial court's exercise of its discretion. (*Lenk*, *supra*, 89 Cal.App.4th at

19

p. 968; *Bolkiah*, *supra*, 74 Cal.App.4th at p. 1000; *Howard*, *supra*, 72 Cal.App.4th at p. 631; *Providian*, *supra*, 96 Cal.App.4th at p. 301.)

B

*Psychologist fees*.  The trial court denied, in part, Mother's request for an award of psychologist fees, stating in part:

> "Mother also submits supporting documentation, in the form of an invoice, of $3,400.00 in fees she paid to Raymond Murphy, Ph.D.[,] regarding ongoing therapeutic consultation.  Her request for reimbursement of Dr. Murphy's fees associated with her ongoing therapy is denied.  She also submits a Statement of Services from Dr. Murphy indicating a 'paid invoice' for 1/2 day of testimony at the hearing of October 9, 2013.  Dr. Murphy does not indicate whether Mother or Father paid the bill.  The court assumes Mother paid Dr. Murphy since she is submitting it in support of her request.  If Mother paid Dr. Murphy for his appearance to testify, that is an expense the court considers appropriate for reimbursement.  The court finds a disparity in access in funds and finds that Father has the ability to pay this expense in addition to his expenses.  Father is ordered to reimburse Mother $1,000.00 if she incurred an expense for Dr. Murphy's appearance in court on or before January 15, 2015."

However, Mother has not carried her burden on appeal to show she is entitled to reimbursement from Father for psychologist fees she incurred for ongoing therapy.  None of the authorities she cites (e.g., §§ 2030-2034; *In re Marriage of Colvin* (1992) 2 Cal.App.4th 1570) provide for, or apply to, psychologist fees for ongoing therapy for a parent in a child support case.  Furthermore, although she asserts she received counseling at the recommendation of the trial court, she does not support that assertion with a specific citation to the record and does not show she is entitled to reimbursement of fees for ongoing therapy if the court recommended it.  We conclude Mother has not carried

20

her burden on appeal to show the trial court abused its discretion by denying her request for an award of Dr. Murphy's fees incurred for ongoing therapy.

Mother also asserts she is entitled to reimbursement of psychologist fees for ongoing therapy provided by David Green, Ph.D., in the amount of $3,530. However, she does not cite to the record on appeal showing her request for such fees or the trial court's denial thereof. To the extent she cites her motion for reconsideration and documents attached thereto, she nevertheless does not submit any substantive, much less persuasive, legal analysis showing she is entitled to reimbursement of those fees in the circumstances of this case. We conclude Mother has not carried her burden on appeal to show the trial court abused its discretion by denying her request for an award of Dr. Green's fees incurred for ongoing therapy.

VII

*Prejudgment Interest*

Mother contends the trial court erred by denying her request for an award of prejudgment interest on Father's child support arrearages. In support of her argument, she cites article XV, section 1, of the California Constitution, which provides "[t]he rate of interest upon a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum. . . ." However, that provision does not show, nor does she cite any statutory or case authority otherwise showing, she is entitled to an award of prejudgment interest on the trial court's award of child support arrearages. Prejudgment interest is typically limited to recovery of "damages certain, or capable of being made certain by calculation, and the right to recover which is vested" on

21

a particular day.  (Civ. Code, § 3287, subd. (a).)  Mother does not show the trial court's award of child support arrearages in this case satisfies those requirements.  Accordingly, we conclude the court did not err by denying her request for prejudgment interest.

DISPOSITION

The order is affirmed.  The parties are to bear their own costs on appeal.



                                                                                    McDONALD, J.

WE CONCUR:


McCONNELL, P. J.


NARES, J.